[No. A123591. First Dist., Div. Two. Dec. 28, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
DARYL LAWRENCE MORET, Jʀ., Defendant and Appellant.

**COUNSEL**

Robert L. S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

After appellant pled no contest to one charge of possession of a concealed firearm (Pen. Code, § 12025, subd. (a)(2))[1] and had a second charge dismissed, the court suspended imposition of a prison term and placed him on probation. The court imposed various conditions, among them that appellant abstain from using drugs and alcohol and, in connection with that condition, surrender his medical marijuana card. Defense counsel objected to that condition but, ultimately, appellant agreed to it in lieu of a jail sentence by the court and also waived his right of appeal. Although he neither asked for nor obtained a certificate of probable cause, appellant now appeals from the sentence imposed, specifically the condition requiring nonuse of marijuana and the surrender of his medical marijuana card. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In the late afternoon of July 29, 2008,[2] two Fairfield police officers on bicycle patrol noticed two individuals, both of whom appeared to be under the age of 18, one of them appellant, passing a cigarette back and forth. The officers stopped the youths and asked their ages; appellant responded that he was 19 (which he was) and the other youth that he was 16. It being a misdemeanor to smoke when one is under 18, or assist a person under 18 to do so (see § 308), the officers detained the two youths. They then asked both if either was carrying anything illegal. Appellant responded that he was carrying a gun. The officers then took that gun, a loaded .38-caliber Smith & Wesson revolver, from appellant's front pants pocket. A records check revealed that the gun had been stolen in neighboring Vacaville the previous year. Appellant told the officers that he did not know the gun was stolen, and that he and a friend (a friend he was either unable or unwilling to identify) had found it in "the bushes on Dana Drive" in Fairfield the week before and, since then, had taken turns carrying it because they could not keep it at their homes. Appellant later added that carrying the gun made him "feel safe," and that he was afraid someone might try to attack him.

On November 6, appellant signed, and his counsel approved, a "Waiver of Constitutional Rights and Declaration in Support of Defendant's Motion to Change Plea" (hereafter waiver form). In it, appellant agreed to plead no

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

[2] All further dates are in 2008, unless otherwise noted.

contest to the first count of the information, charging a section 12025, subdivision (a)(2), offense with the prosecution dismissing the second count, charging a violation of section 12031, subdivision (a)(1), albeit with a *Harvey* waiver. (*People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].) The prosecution also agreed not to pursue any criminal charges against appellant for, four months earlier, embezzling $2,000 from his former employer, Mervyn's. Also in that document, appellant acknowledged that, at sentencing, he faced a maximum prison term of three years and then initialed the paragraph in the form reading: "Even though I will be convicted in this case as a result of my plea, I have the right to appeal the judgment and rulings of the court. [¶] **I give up my right of appeal.**" (Original boldface.)

Appellant also initialed the paragraph stating that his attorney had read and explained the entire form to him, which his counsel verified a few lines later. Appellant also signed the form at the end, as did the court.

Apparently sometime between December 1 and 10, appellant was interviewed by a deputy probation officer.[3] In that interview, appellant revealed that he had been unemployed since losing his job at a Mervyn's store four months before because of the embezzlement; he was attending community college, however. He also told the probation officer that he had suffered from migraine headaches since second grade, had "recently obtained a medical cannabis patient identification card," and now smoked marijuana about four times a week, mainly at night before going to bed. He further explained that he had first tried marijuana at age 16, but stopped using it when he got his first job at age 17 and when another drug appeared to be helping him, but then reverted to marijuana when he turned 19, i.e., over a year earlier. Appellant stated that he foresaw difficulty in abstaining from marijuana because it was the only substance that was able to manage his migraine headaches. He was then told by that officer that his "probation terms and conditions will include abstention from drugs and alcohol while under probation supervision."

The probation officer's report was received by the court on December 10, a week before appellant's sentencing hearing on December 17.

At that hearing, defense counsel objected to the drug abstention condition as inappropriate under the circumstances, and requested both that appellant be allowed to continue using marijuana and to keep his medical marijuana card during his probationary term. After a pause to allow appellant and his counsel

---

[3] This clearly seems to be the period during which this interview took place, both because of the dates shown for the approval and filing of the report and because it has attached to it a copy of appellant's medical marijuana card, "recently obtained" by him a few days before his interview with the deputy probation officer, i.e., on December 1, 2008.

to confer, this continued to be appellant's position. The court maintained that appellant had to choose between abiding by the probationary conditions in order to receive "ASP" (the alternative sentencing program agreed to by the parties and the court) or giving up "his freedom." The court also added some other reasons for its decision, which we will note below. In any event, defense counsel then stated that appellant agreed to the "ASP" with the conditions noted, although counsel reiterated her objection to that choice. Appellant then answered "Yes" to the court's question if he agreed not to smoke marijuana and surrender his medical marijuana card as a condition of probation.

The court's final judgment and sentence included a restitution requirement regarding the Mervyn's embezzlement and only a three-day jail term, satisfied by credit for time already served. Appellant was ordered to abstain from the use of alcohol and illegal drugs and agreed, both verbally and in writing, not to use marijuana while on probation and to surrender his medical marijuana card.

The following day, December 18, appellant filed a notice of appeal which specifically stated that he was appealing from "the sentence or other matters occurring after the plea . . . specifically (1) the court's requirement that he choose between a jail sentence and being allowed to take marijuana for his medical condition pursuant to Health and Safety code section 11362 et sec [*sic*]; (2) imposition of drug testing terms and (3) no drug/alcohol terms." No certificate of probable cause was requested or secured, however.

## III. DISCUSSION

Appellant's position on appeal is essentially the same as that asserted at the sentencing hearing and in his notice of appeal, i.e., that the court erred in insisting that appellant had to choose between the conditions of probation recommended by the probation department, including giving up marijuana use and his medical marijuana card, or not receiving probation at all and thus serving a prison term.

The People contend that these arguments lack merit because (1) appellant waived his right to appeal by his written and verbal waiver of November 6, (2) appellant did not secure a certificate of probable cause before filing his appeal, and (3) the court did not abuse its discretion in imposing such a condition of probation for appellant, inasmuch as he specifically agreed to it at the December 17 sentencing hearing. Because we agree with the People's final contention, we do not reach their other two.

The combination of several factors leads us to conclude that the trial court did not abuse its discretion in imposing the no-marijuana-use condition.

These factors include (1) appellant's personal situation, including specifically his recent admitted embezzlement of money from his first employer and his apparent credibility problems, (2) his explicit agreement—both verbal and written—at his sentencing hearing to the now challenged probation condition in lieu of a possible prison sentence, (3) substantial appellate precedent supporting the imposition of such a condition, and (4) the provisions of two sections of the Health and Safety Code, sections 11362.795, subdivision (a) (§ 11362.795(a)), and 11357.

It has long been the law in California that a trial court is vested with substantial discretion in deciding the appropriate conditions of probation in any individual case. In December of last year, our Supreme Court, in an opinion authored by the Chief Justice, upheld a probation condition requiring a defendant who had pled guilty to two counts of DUI (driving under the influence) to notify his probation officer of the presence of any pets in his residence. In so doing, the court summarized the applicable principles thusly: " 'Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation. [Citations.] The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and, if so, under what conditions. [Citations.] The primary goal of probation is to ensure "[t]he safety of the public . . . through the enforcement of court-ordered conditions of probation." [Citation.]' [Citation.] Accordingly, the Legislature has empowered the court, in making a probation determination, to impose any 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . .' (Pen. Code, § 1203.1, subd. (j).) Although the trial court's discretion is broad in this regard, we have held that a condition of probation must serve a purpose specified in Penal Code section 1203.1. [Citations.] *If a defendant believes the conditions of probation are more onerous than the potential sentence, he or she may refuse probation and choose to serve the sentence.* [Citation.] Additionally, at the sentencing hearing, a defendant can seek clarification or modification of a condition of probation. [Citations.] [¶] We review conditions of probation for abuse of discretion. [Citations.] Generally, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' [Citation.] This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself

criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality. [Citation.]" (*People v. Olguin* (2008) 45 Cal.4th 375, 379–380 [87 Cal.Rptr.3d 199, 198 P.3d 1], italics added (*Olguin*).)[4]

One of our sister courts has also summarized essentially these same principles in these words: "Section 1203.1 gives trial courts broad discretion to impose conditions of probation to foster rehabilitation of the defendant, protect the public and the victim, and ensure that justice is done. [Citations.] 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. . . ." [Citation.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality.' [Citation.] As with any exercise of discretion, the court violates this standard when it imposes a condition of probation that is arbitrary, capricious or exceeds the bounds of reason under the circumstances. [Citation.]" (*People v. Jungers* (2005) 127 Cal.App.4th 698, 702 [25 Cal.Rptr.3d 873]; see also 3 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Punishment, §§ 559, 560, and cases cited therein.)[5]

As noted above, at the time of his detention and arrest, appellant was carrying a loaded .38-caliber revolver while in the company of a 16-year-old friend. He had had that gun since, he told the police, he found it a week earlier in some bushes. Later, he told the probation officer that the gun "made him feel safe and that he was afraid somebody might try to attack him," that he had been shot at "about one week prior to finding the gun," that he had shared it with a friend he was either unable or unwilling to identify, and that he was planning to give the gun to a female friend "to keep it safe for him." At the time, appellant was out of work, having been discharged by Mervyn's four months earlier for embezzling $2,000, and had committed to both that store and the Fairfield Police Department to repay that sum to the store.

---

[4] We respectfully submit that the italicized sentence above responds adequately to our dissenting colleague's assertion that: "Our high court has never suggested that a condition of probation that has no relationship to the crime of which the defendant is convicted, relates to conduct that is not itself criminal, and requires or forbids conduct that is not reasonably related to future criminality [citation] can nevertheless be legitimated by an 'agreement' of the sort appellant entered into with the trial court here." (Dis. opn., *post*, at p. 875.) But, of course, that is precisely what the quoted holding from last year's *Olguin* opinion does.

[5] We will, hereafter, deal more specifically with the legal authority authorizing the type of probation conditions involved here.

The issue of appellant's marijuana use never arose then; it arose for the first time at his interview with the probation officer, which apparently occurred a week or two before the December 17 sentencing hearing. Appellant advised the officer that he had started using marijuana at age 16 because it helped his migraine headaches; he stopped the following year because he then "started his first job" and took a new medication "which appeared to manage his symptoms." However, at age 19 (i.e., over a year earlier) he reverted to using marijuana "about four times a week" when the other prescription had apparently stopped working. He took it "mainly at night before bedtime" and thus it did not "interfere with his school attendance [apparently Solano Community College] or performance."

The trial court was obviously concerned with the combination of appellant's (1) recent embezzlement of monies and consequent loss of (apparently) his first job, (2) carrying a loaded .38-caliber revolver which had been stolen in a nearby town the preceding year, (3) admission to allowing another friend (whom he was unable to identify by either name or residence) to also carry the weapon, (4) plans to allow a female friend to do the same so as to "keep it safe for him," and (5) regular use of marijuana.

In considering these factors, the court first made clear that it did not credit appellant's version concerning how he came into possession of the gun. Then it added, in very much the same vein: "Well, here is my problem. If I put him in jail, he won't be smoking his medical marijuana. This gentleman had a firearm, with a most implausible explanation for it, one that if he really expects the Court to believe this, he might as well ask me to believe in Santa Claus. [¶] I don't believe any part of this, 'I found it in the trash or the bushes.' I don't believe one word of this. This was a gun that was stolen less than a year ago out of Vacaville. He's got it. A handgun like this is good for one thing, and that's shooting somebody. So if he's in a situation where he needs to have a gun to shoot somebody, he's got real problems going on in his life, and smoking dope isn't helping him. That's the bottom line. [¶] So I'm willing—I mean, he has a really, almost no criminal history. He's a young man. Obviously, he's got potential, but he keeps smoking dope and carrying firearms, and he's going to have a lot of problems in this life, if he lives very long. [¶] If he can give me one good reason why he's carrying this gun, I'd like to hear it. But I see what he told probation, and he may think that he's sort of gaming them. . . . [¶] So I have every justification, if I wish to put him in jail for a while. I don't really know that that would be the best solution here for this defendant. As I said, he's a young man. He obviously has made a mistake, and he's made a couple of mistakes here recently, this mistake, the embezzlement that he is involved in, but it's certainly not too late for him to get things turned around. He doesn't have a serious record. In my opinion, smoking dope isn't going to help any of this. . . . [¶] So if he

wants to, you know, game the system, which I think is what's really going on here with this medical marijuana for a headache."

A few minutes later the court twice offered to allow appellant to use Marinol, "but if he doesn't want to do that, he doesn't have to. You're right. So the choice is his."

As noted, appellant then specifically made such a "choice" and opted to agree to the no-marijuana condition and give up his medical marijuana card. This choice and agreement were then made explicit on the final page of the order of probation filed on December 17. There, appellant affixed his signature underneath the statement: "The terms and conditions of probation have been explained to me and I fully understand them and agree in every particular to abide by them." This statement—again, followed by appellant's signature—appears directly beneath this handwritten condition: "Deft. agrees not to use marijuana while on probation. He also agrees to surrender medical marijuana card."

We agree with this exercise of the court's discretion for four specific reasons, two of them based on the record and two based on the applicable statutes and cases interpreting them.

The first reason is that the trial court obviously felt—and we believe correctly—that considerable doubts had been raised regarding appellant's credibility. The premises for these doubts were that (1) at age 17 or 18, he embezzled $2,000 from his first employer; (2) he claimed to have found a stolen and loaded .38-caliber Smith & Wesson "in the bushes" a few weeks earlier; and (3) he could not give the probation officer either the name or the address of the other youth with whom he had supposedly shared possession of the loaded gun. These combined factors clearly led the court, quite justifiably we think, to doubt appellant's "medical marijuana for a headache" claim.

But another, separate, reason reinforces these doubts. Despite the fact that that issue was both inquired into by the probation officer and then discussed in that officer's report to the court, no evidence or argument was offered, or for that matter even hinted at, to support appellant's claims that he (1) had migraine headaches, (2) had consulted a doctor regarding them, and (3) used marijuana only at bedtime four times a week. Thus, neither the letters from appellant's parents, pastor, and a neighbor, nor even his own letters to the court, mention his use of marijuana, much less the reasons for it, i.e., alleged migraine headaches. Nor did appellant's counsel offer to supply any such evidence to the court. Indeed, the *only evidence* anyplace in the record on this subject was a copy of the "recently obtained" medical marijuana card attached at the end of the deputy probation officer's report.

Our dissenting colleague inexplicably ignores the "recently obtained" statement in the probation officer's report, instead arguing that "there is no reason to assume from the date of the card that it was not a renewed card . . . ." (Dis. opn., *post*, at p. 871, fn. 3.) But there very clearly is: the express statement in the probation report that it was "recently obtained," meaning, clearly, obtained just a few days prior to the early December interview with the probation officer, whose report regarding that interview was filed exactly a week prior to the December 17 hearing. And appellant "recently obtained" it, notwithstanding his admission that he had been using marijuana for over a year, i.e., since turning 19 in September 2007. Further, there was clearly no acceptance by anyone of the "migraine headaches" rationale given by appellant to that officer. That officer said nothing one way or the other regarding her evaluation of appellant's "migraine headaches" claim, but merely recorded what appellant was telling her. And the deputy district attorney said nothing whatsoever on this subject at the December 17 hearing; indeed, she made only two short statements to the court, both regarding the ASP sentence alternative. Finally, the statements of the court, quoted above, clearly demonstrate its view on this subject. The trial court was—and properly so, in our opinion—dubious regarding appellant's credibility and thus apparently evaluated his "migraine headache" rationale in the same light as it evaluated the "found it in the bushes" story about the loaded gun he was carrying (a story offered by appellant both to the arresting police and to the deputy probation officer). We suggest that, with regard to the "migraine headache" rationale, the trial court could also have been influenced by two points noted above: (1) the complete and total absence of any evidence of—or even discussion or argument about—any consultation by appellant with a physician about his alleged headaches, even in appellant's and his parents' letters to the court;[6] and (2) the fact that his medical marijuana card was "recently obtained," clearly meaning secured by appellant subsequent to his July arrest and

---

[6] Our dissenting colleague (1) argues that "[n]o witness disputed appellant's statement that he suffers migraine headaches, which is specified in the [Compassionate Use Act] as an illness for which marijuana provides relief" (dis. opn., *post*, at p. 869), (2) also argues that the trial court "expressed no interest in the validity of appellant's medical marijuana card and never asked him to show that he genuinely suffered migraine headaches for which medical marijuana had been recommended or approved by a physician" (*id.* at p. 864) and "chose instead to avoid the question whether appellant's use of medical marijuana was recommended or approved by a physician" (*id.* at p. 889), and (3) seems to assume that there was medical support for appellant's claim of migraine headaches (see, e.g., *id.* at pp. 861, 871–872). All of these contentions and assumptions put the shoe on the wrong foot: no one produced—or even offered to produce—any evidence that appellant suffered from migraine headaches, nor was the word "physician" ever uttered by appellant or his counsel at the sentencing hearing or mentioned in any of the letters provided to the court on appellant's behalf. As discussed further *post*, the CUA (Compassionate Use Act of 1996; Health & Saf. Code, § 11362.5) provides, and provides only, *affirmative defenses* to issues such as these. (See *People v. Fisher* (2002) 96 Cal.App.4th 1147, 1151–1152 [117 Cal.Rptr.2d 838] (*Fisher*).)

November plea, i.e., just a few days before his interview with the probation officer and, at the most, two weeks before the sentencing hearing.

In sum, we find that this trial court clearly exhibited both a reasonable and a balanced perspective regarding appellant's personal situation. On the positive side, it stressed his relative youth, his "doing well in school," and the fact that he had "almost no criminal history." It also offered, not once but twice, to allow appellant to take Marinol if that would aid in solving his claimed headache problems.[7] On the other side of the proverbial scale, the court was also clearly concerned about appellant's credibility in some of the statements he had made to the arresting officers and the probation officer, his carrying of a loaded weapon "found . . . in the bushes," his admitted, and recent, embezzlement from his former employer, and his admitted on-and-off use of marijuana since age 16 and, very possibly, his extremely recent acquisition of a medical marijuana card. After balancing all these considerations, the trial court determined that it would help in "basically straightening things out" and "being a productive member of the community" that he abstain from using marijuana while on probation. Thus, the trial court clearly and properly exercised its discretion.[8]

■ A third basis for our finding no abuse of discretion by the trial court rests on case law relevant to the type of specific condition involved here. The appellate courts of this state have traditionally interpreted the broad language of section 1203.1, subdivision (j) (section 1203.1(j)), as justifying reasonable probationary conditions. These have regularly included conditions precluding the use of either alcohol or drugs during the term of probation. Thus, in *People v. Balestra* (1999) 76 Cal.App.4th 57, 68–69 [90 Cal.Rptr.2d 77] (*Balestra*), a division of the Fourth Appellate District rejected an argument by a probationer who had pled guilty to one count of elder abuse and was granted probation subject to an alcohol- and drug-testing condition, that such a condition was improper. After quoting the critical language of section 1203.1(j), the court held (rejecting earlier decisions from its district): "This court has recently demonstrated the correct deference to the trial court's determination of appropriate conditions of probation, in a case where we rejected the argument, accepted in *Kiddoo* [one of those prior decisions], that a no-alcohol condition is somehow not 'reasonable': [¶] 'Although an argument can be made that *Kiddoo* is factually distinguishable from this case

---

[7] In his criticism of the trial court's imposition of the probation condition, our dissenting colleague never mentions its "Marinol option" offer.

[8] We thus respectfully suggest that our dissenting colleague is quite mistaken when he summarizes our holding of no abuse of discretion by stating that it is based on appellant's agreement to the condition and on the basis that "appellant had the burden of proving his eligibility to use medical marijuana and failed to sustain it . . . ." (Dis. opn., *post*, at p. 860.) As the preceding portions of our opinion make clear, our finding of no abuse of discretion is based on *much more* than this.

[citation], we disagree with the fundamental assumptions in *Kiddoo* that alcohol and drug abuse are not reasonably related . . . . [¶] . . . Whether the trial court determines to impose such a condition is thus within its sound discretion and, if it does, the defendant must either submit to the condition or, if she considers the condition "more harsh than the sentence the court would otherwise impose, [exercise] the right to refuse probation and undergo the sentence." . . . [Citation.]' [Citation.]" (*Balestra, supra*, 76 Cal.App.4th at pp. 68–69.)[9]

This court, in a decision joined in by our now dissenting colleague, cited *Balestra* approvingly. In *People v. Brewer* (2001) 87 Cal.App.4th 1298, 1311 [105 Cal.Rptr.2d 293], superseded by statute on other grounds as noted in *Good v. Superior Court* (2008) 158 Cal.App.4th 1494, 1504, 1510, fn. 13 [71 Cal.Rptr.3d 125], we described the general principles governing the review of conditions of probation as follows: "In granting probation, courts have broad discretion to impose conditions which aid in the 'reformation and rehabilitation of the probationer.' [Citations.] 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." ' (*People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545] . . . .) If a probation condition serves the statutory purpose of ' "reformation and rehabilitation of the probationer," ' such condition is ' "reasonably related to future criminality" ' and will be upheld even if it has no ' "relationship to the crime of which the offender was convicted." ' [Quoting *Balestra*.]" (*People v. Brewer, supra*, at p. 1311.)

But perhaps the most pertinent authority here is *People v. Bravo* (1987) 43 Cal.3d 600 [238 Cal.Rptr. 282, 738 P.2d 336] (*Bravo*). There, the defendant was convicted of possessing concentrated cannabis, and appealed on the ground that his home had been unlawfully searched because the police acted without a search warrant. The prosecution argued, apparently successfully in the trial court, that such a search was permissible because, after a previous conviction on the same charge, the defendant had been given probation subject to the express condition that his home and person could be searched without a warrant. But the defendant contended such a search was invalid because it had to be based on "reasonable cause to believe he was currently involved in criminal activity." (*Id.* at p. 604.) The appellate court reversed the defendant's second conviction because, notwithstanding the search condition previously imposed, the search "was unreasonable by any standard." (*Ibid.*)

---

[9] *Balestra* was specifically cited approvingly by our Supreme Court in December 2008 in *Olguin, supra*, 45 Cal.4th at page 379.

Our Supreme Court unanimously reversed the appellate court's decision, holding that a search conducted pursuant to consent contained in a probation condition does not violate the Fourth Amendment. In so holding, it addressed the general rule applicable to probation conditions imposed on a defendant that are later objected to by him or her: "A probationer, unlike a parolee, consents to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term. *Probation is not a right, but a privilege. 'If the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence.* [Citations.]' [Citations.]" (*Bravo, supra,* 43 Cal.3d at pp. 608–609, italics added.)

The holding of *Bravo* is still very much the law in California. (See, e.g., *People v. Woods* (1999) 21 Cal.4th 668, 675 [88 Cal.Rptr.2d 88, 981 P.2d 1019]; *In re York* (1995) 9 Cal.4th 1133, 1150 [40 Cal.Rptr.2d 308, 892 P.2d 804]; *In re Tyrell J.* (1994) 8 Cal.4th 68, 82 [32 Cal.Rptr.2d 33, 876 P.2d 519], overruled on another ground in *In re Jaime P.* (2006) 40 Cal.4th 128 [51 Cal.Rptr.3d 430, 146 P.3d 965]; *People v. Medina* (2007) 158 Cal.App.4th 1571, 1576, fn. 2 [70 Cal.Rptr.3d 413].)[10] More importantly, the holding of *Bravo* is directly pertinent to the contentions of our dissenting colleague, who argues that it is inappropriate to impose a nonuse-of-marijuana condition when, if appellant had not agreed to that condition, his alternative could well have been a jail term. But, clearly, *Bravo* holds directly to the contrary, i.e., that it is entirely appropriate to require a prospective probationer to choose between such a condition of probation on the one hand and jail or prison on the other.[11] In short, these authorities make clear that the trial court did not, as our dissenting colleague suggests, impose a criminal sanction on appellant via the probation conditions at issue here.

---

[10] In *People v. Peck* (1996) 52 Cal.App.4th 351, 361–363 [61 Cal.Rptr.2d 1], the appellate court also emphasized that "[b]ecause probation is a privilege and not a right [citation], a probationer is not entitled to the same degree of constitutional protection as other citizens. Accordingly, even a probation condition which infringes a constitutional right is permissible where it is ' "necessary to serve the dual purpose of rehabilitation and public safety." ' [Citation.]" (*Id.* at p. 362.)

[11] We find nothing at all contrary in Justice Arabian's concurring opinion in *People v. Welch* (1993) 5 Cal.4th 228, 238–241 [19 Cal.Rptr.2d 520, 851 P.2d 802] (conc. opn. of Arabian, J.). In that case, the court unanimously agreed that the failure of a defendant to challenge the reasonableness of a probation condition "proposed at the probation and sentencing hearing constitutes a waiver of the claim on appeal." (*Id.* at p. 230.) In his brief concurring opinion, Justice Arabian, joined by Justice Kennard, agreed, but added that the imposition of such conditions should not (1) violate "procedural due process" (such as when imposed without a probation department's report in misdemeanor cases), (2) be imposed with any "vindictiveness," or (3) apply as and when "legal error is demonstrable." (*Id.* at pp. 238–240 (conc. opn. of Arabian, J.).) In so doing, Justice Arabian not only wrote nothing contrary to our holding, he specifically expressed himself as supportive of it by stating: "If the trial court determines in the proper exercise of its discretion that it cannot achieve the rehabilitative goals of probation without imposing an objectionable condition, then it will be fully justified in denying probation

Further, a relatively new statute plainly supports the imposition of such a condition. Before the enactment of Health and Safety Code section 11362.795(a), effective in 2004, the cases addressing whether a "don't use marijuana" probation condition was appropriate since the passage of the CUA (see Health & Saf. Code, § 11362.5 et seq.) were not entirely consistent.[12] However, the 2004 statute (§ 11362.795(a)) clearly permits the trial court to impose such a condition. It provides, in pertinent part: "(a)(1) Any criminal defendant who is eligible to use marijuana pursuant to Section 11362.5 may request that the court confirm that he or she is allowed to use medical marijuana while he or she is on probation or released on bail. [¶] (2) The court's decision and the reasons for the decision shall be stated on the record and an entry stating those reasons shall be made in the minutes of the court. [¶] (3) During the period of probation or release on bail, if a physician recommends that the probationer or defendant use medical marijuana, the probationer or defendant may request a modification of the conditions of probation or bail to authorize the use of medical marijuana." (§ 11362.795(a).)

█ Interestingly, no published appellate decision to date has discussed or even cited this provision (although a few unpublished ones have had occasion to consider it). It was one of many provisions of an extended statute adopted by the Legislature in late 2003 (effective on Jan. 1, 2004) that purports to define and regulate the use of marijuana for medical purposes, including provision for the issuance and use of a medical marijuana card. (See Stats. 2003, ch. 875.) The only reasonable interpretation of section 11362.795(a) is that a trial court has discretion to impose a no-marijuana-use probation condition on the holder of a medical marijuana card. This is so both because of the general law, discussed above, regarding the broad authority vested in a trial court regarding such matters and also because of the specific language of the statute. Thus, and quoting the first paragraph of section 11362.795(a), since a trial court may "confirm" that the probationer is allowed to use marijuana while on probation, it would seem obvious that it may also not so "confirm."[13] Indeed, the following paragraph—a provision

on that basis if the defendant declines to accept it." (*Id.* at p. 239 (conc. opn. of Arabian, J.).) We fully agree with this statement.

[12] Compare *Balestra, supra,* 76 Cal.App.4th at pages 68–69 and *People v. Bianco* (2001) 93 Cal.App.4th 748, 752–754 [113 Cal.Rptr.2d 392] with *People v. Tilehkooh* (2003) 113 Cal.App.4th 1433, 1440–1447 [7 Cal.Rptr.3d 226] (*Tilehkooh*). Further, and regarding *Tilehkooh*, the dissent's extended reliance on the holding of that case (see dis. opn., *post,* at pp. 865–866) ignores the fact that it was decided *before* the effective date of Health and Safety Code section 11362.795(a), i.e., when the *only* relevant statute was Health and Safety Code section 11362.5. The holding of *Tilehkooh* is, therefore, of questionable validity when applied contrary to the express terms of the 2004 statute.

[13] The dissent appears to contend that the term "confirm" in section 11362.795(a)(1) means that the entire subdivision should be interpreted negatively to the imposition of a no-marijuana-use probation condition, and in so doing focuses almost entirely on the term "confirm." (See

almost entirely ignored by the dissent—makes this clear by specifying what is required of the trial court, i.e., a "decision." (§ 11362.795(a)(2).)

Finally, section 11362.795(a)(3)—also effectively ignored by the dissent—makes clear that, *even now*, appellant can attempt to resolve this matter to his satisfaction, i.e., by getting a physician's written endorsement of his use of medical marijuana and then making a "request" to the trial court for a modification of the no-marijuana-use condition agreed to by appellant on December 17.[14]

As the record before us establishes, appellant's trial counsel never invoked section 11362.795(a) before the trial court nor did the court mention the statute in indicating its "reasons for the decision" on the record. However, the exchange at the sentencing hearing partially quoted above effectively satisfies almost all of the requirements of subdivision (a)(1) and (2) of the statute. Further, the lack of any "entry . . . in the minutes of the court" regarding its "reasons for the decision" (§ 11362.795(a)(2)) was waived in that court by the lack of any request therefore by appellant. And it is certainly waived now by the lack of any mention of the statute anywhere in appellant's briefs to this court.

The dissent appears to feel that we cannot rely on section 11362.795 because the court did not "provide appellant notice of the need for and a reasonable opportunity to produce . . . evidence demonstrating that his use of marijuana satisfied the conditions of the CUA." (Dis. opn., *post*, at p. 862; see also, to same effect, *id.* at pp. 869–872 & 887.) As noted above (see fn. 6, *ante*), it was not the responsibility of either the trial court or the prosecutor to (1) cite section 11362.795 to appellant or his trial counsel, (2) invite them to present evidence of the "migraine headaches" rationale for the "recently obtained" medical marijuana card, or (3) suggest they consider making a

---

dis. opn., *post*, at p. 886.) Section 11362.795(a), quoted in full above, requires the court to initially make a "decision" regarding whether to grant a probationer's initial "request that the court confirm that he . . . is allowed to use medical marijuana while . . . on probation," then enter its reasons for that "decision" in the court's record, and thereafter also consider a "request" for modification of a previous negative decision *if, as and when* such a request is supported by a "recommend[ation]" of a "physician." This language totally undermines the dissent's argument. Put another way, after the adoption of section 11362.795(a) in 2004, the suggestion that the 1996 CUA precludes a trial court from imposing a "no-marijuana" probation condition is simply untenable.

[14] The fact of the matter is that appellant can do *precisely that at any time* during his "period of probation" (§ 11362.795(a)(3)), i.e., *right now*. This obvious option is dealt with nowhere in the dissenting opinion.

"request" pursuant to section 11362.795(a)(1) or (3) for a modification of the proposed probation condition. Such was the responsibility of appellant and his trial counsel *and no one else*.

A few final points: First of all, the dissent seems to assume—principally from some of the legislative history of the 2004 Medical Marijuana Program Act (MMP)—that the entire purpose of the MMP was to liberalize the use of marijuana even further, and that nothing in it could conceivably have been intended to, even in the slightest way, address the subject of controls on the use of marijuana. But as our Supreme Court has recently noted, the MMP was passed to "address issues not included in the [CUA], so as to promote the fair and orderly implementation of the [CUA] and to '[c]larify the scope and application of the [CUA].' " (*People v. Mentch* (2008) 45 Cal.4th 274, 290 [85 Cal.Rptr.3d 480, 195 P.3d 1061]; see also *People v. Hochanadel* (2009) 176 Cal.App.4th 997, 1013 [98 Cal.Rptr.3d 347]; *County of Butte v. Superior Court* (2009) 175 Cal.App.4th 729, 732 [96 Cal.Rptr.3d 421].)

Indeed, a case decided just a few months ago makes clear that various other provisions of the MMP were intended to and did impose additional controls on the use of marijuana. In *City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1172 [100 Cal.Rptr.3d 1] (*City of Claremont*), the court noted that: "[T]he MMP quantifies the amount of marijuana a qualified patient may possess [citation], provides that employers need not accommodate the medical use of marijuana [citation], and identifies places and circumstances where medical use of marijuana is prohibited [citation]."[15] Presumably the dissent would likewise hold all of these provisions of the MMP unconstitutional. They clearly are not.

---

[15] The first MMP-imposed limitation cited by the *City of Claremont* court is found in Health and Safety Code section 11362.77, subdivisions (a) and (b), which limits the amount of marijuana a "qualified patient" can possess to "no more than eight ounces of dried marijuana" and "no more than six mature or 12 immature marijuana plants" if there is no doctor's recommendation that these amounts are insufficient to meet the patient's needs. (*Ibid.*)

Consistent with the *City of Claremont* court's implicit holding that these additions to marijuana regulation made by the MMP are perfectly permissible, in *County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 828–831 [81 Cal.Rptr.3d 461], a panel of the Fourth Appellate District held that the MMP did not "improperly amend" the CUA regarding the whole identification card procedure. It held: "The MMP, in effect, amended provisions of the Health and Safety Code regarding regulation of drugs adopted by the Legislature, not provisions of the CUA. Because the MMP's identification card program has no impact on the protections provided by the CUA, we reject [the] claim that those provisions are invalidated by . . . the California Constitution." (165 Cal.App.4th at p. 831.) Just so here.

The issue of the interaction between the CUA and the MMP, and the extent to which the latter could and did constitutionally affect the former, is involved in two now unpublished decisions of our sister court now under review by our Supreme Court. (See *People v. Kelly* (2008) 163 Cal.App.4th 124 [77 Cal.Rptr.3d 390], review granted Aug. 13, 2008, S164830; *People v. Phomphakdy* (2008) 165 Cal.App.4th 857 [81 Cal.Rptr.3d 443], review granted Oct. 28, 2008, S166565.)

■ More importantly, there is clearly no conflict between section 11362.795's provisions allowing a superior court to make a "decision" regarding a "no-marijuana" probation condition and Health and Safety Code section 11362.5, subdivision (b)(1)(B). The latter section simply declared that one of the purposes of the CUA was to "ensure that patients . . . who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction." The MMP in general and section 11362.795 in particular do not conflict with this stated purpose. No case cited by the dissent holds, or even suggests, that the imposition of a probation condition, especially one expressly agreed to, amounts to a "criminal sanction." The holding of *Tilehkooh* (again, a decision rendered *before* the effective date of § 11362.795) was that a *revocation* of probation based on the use of marijuana was such a sanction and therefore subject to the *defense* provided by section 11362.5. (*Tilehkooh, supra,* 113 Cal.App.4th at pp. 1441–1445.) That is not at all this case.[16]

Second, notwithstanding the CUA, under California law possession of marijuana is still illegal. (See Health & Saf. Code, § 11357 (section 11357); *Fisher, supra,* 96 Cal.App.4th at p. 1151; cf. also *Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 928–929 [70 Cal.Rptr.3d 382, 174 P.3d 200].)

Third, with regard to both the CUA and the MMP, any and all defenses to criminal charges filed against a defendant must be *asserted and then established* as affirmative defenses. (See, e.g., *People v. Wright* (2006) 40 Cal.4th 81, 85, 93–94 [51 Cal.Rptr.3d 80, 146 P.3d 531]; *People v. Mower* (2002) 28 Cal.4th 457, 481–483 [122 Cal.Rptr.2d 326, 49 P.3d 1067]; *Fisher, supra,* 96 Cal.App.4th at pp. 1151–1152; cf. also *People v. Lam* (2004) 122 Cal.App.4th 1297, 1301 [19 Cal.Rptr.3d 431] [citing *Fisher* approvingly].) Although the dissent purports to acknowledge this principle (see dis. opn., *post,* at p. 870), it nonetheless consistently maintains that the prosecution and/or the court bore the burden of establishing some sort of illegitimacy regarding appellant's "recently obtained" medical marijuana card before the relevant probation condition could be imposed.

Fourth and finally, the assertion and establishment of the legal right to use medical marijuana is exactly what is authorized by section 11362.795(a)(3), a

---

[16] In attempting to apply the holding of *Tilehkooh* to the present fact situation, the dissent suggests that there is essentially no difference between the imposition of a probation condition and the revocation of probation. (See dis. opn., *post,* at p. 866.) But this seems to fly squarely in the face of both the relevant statutes and our Supreme Court's interpretation of them. Thus, section 1202.7 provides that factors such as the "reintegration of the offender into the community" and "the needs of the defendant shall be the primary considerations in the granting of probation." (§ 1202.7; see also § 1203.1(j); *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120–1121 [43 Cal.Rptr.2d 681, 899 P.2d 67], applying those statutes.)

provision, as already noted, almost totally ignored by the dissent, and not utilized by appellant either in December 2008 nor, apparently, at any time since then.

■ In summary, the combination of the provisions of Health and Safety Code sections 11357 and 11362.795 and the authorities cited above regarding the imposition of probation conditions, make it clear that there was nothing in the slightest "unlawful" or "unconstitutional"[17] about the probation conditions imposed on, and *explicitly agreed to by*, appellant. In view of all these considerations, the court did not abuse its discretion when it gave appellant the choice to accept conditions of probation requiring the nonuse of marijuana, surrender of his medical marijuana card, and agreement to be tested for drugs, or face jail or prison. Nor, especially in light of the language of sections 11357 and 11362.795(a), did this involve any improper or unlawful choice being forced on appellant.

## IV.  DISPOSITION

The judgment is affirmed.

Richman, J., concurred.

**RICHMAN, J., Concurring.**—I concur in the result reached by Justice Haerle that the judgment be affirmed. I write separately, however, to say that I would refrain from the discussion in the last five pages of Justice Haerle's opinion, the pages discussing Health and Safety Code section 11362.795, subdivision (a), the "relatively new statute" that he asserts "further . . . supports" what the trial court did here, and the statute addressed in part V of Presiding Justice Kline's dissent. I do not think that statute is a necessary or appropriate subject, for two reasons.

First, and fundamentally, the effect of the statute was not briefed by the parties: the statute was not even mentioned in either of defendant's briefs, and was mentioned only in passing by the Attorney General, in one sentence without exposition.

Second, the statute is unnecessary to the opinion, in light of what happened below: defendant agreed to waive any claimed right to smoke medical marijuana. Contrary to Presiding Justice Kline's view of what occurred, I do not read the record as involving a trial court which "impose[ed] an unlawful condition of probation." (Dis. opn., *post*, at p. 860.) I view the record as

---

[17] See dissenting opinion, *post*, at pages 860, 873, 874–875, 884, 887.

defendant, with full communication with his counsel, expressly waiving his claimed right so that he would avoid "jail" and continue to attend community college.

What I perceive happened here is that an experienced and conscientious trial judge had before him a young man who, as the court stated, had "potential." As the trial court also noted, defendant had no "serious" record, though agreeing to "restitution" for an "embezzlement" certainly smacks of "criminal conduct," the words actually used by defendant's counsel—which conduct apparently resulted in no "criminal record" only because of a benevolent district attorney. That young man, the trial court could also observe, was starting down, perhaps continuing down, a slippery slope, which may have begun with defendant's admitted marijuana—not medical marijuana—use at ages 16 and 17. Then came the embezzlement. Then, and most seriously, defendant was found with a loaded gun, stolen months before, and defendant's frankly preposterous story about how he found it. And then came the apparently recently obtained medical marijuana card for migraine headaches, headaches and medical marijuana utterly unmentioned by defendant's parents or their pastor in their letters seeking leniency—the circumstance to which the trial court referred as "gam[ing] the system." And so, the trial court in essence said, "Okay, young man, I'm going to call your bluff: Quit messing with the system and get your act together." Defendant agreed.

*People v. Blakeman* (1959) 170 Cal.App.2d 596, 598 [339 P.2d 202] notes that " 'a defendant may waive rights which exist for his own benefit . . . .' " Indeed, as Division One of this court confirmed 50 years ago, one may waive any civil right. (*Graham v. Graham* (1959) 174 Cal.App.2d 678, 683 [345 P.2d 316].) This is what defendant did. It is hardly novel.

For almost 140 years California law has provided that "Any one may waive the advantage of a law intended solely for his benefit." (Civ. Code, § 3513.) This maxim of jurisprudence has been applied in a variety of criminal cases, upholding waivers of significant rights. (See, e.g., *People v. Johnson* (2002) 28 Cal.4th 1050, 1055 [123 Cal.Rptr.2d 700, 51 P.3d 913] [waiver of credits for time in custody]; *People v. Valdez* (1947) 82 Cal.App.2d 744, 749 [187 P.2d 74] [confrontation of witnesses]; *People v. Manriquez* (1922) 188 Cal. 602, 606 [206 P. 63] [time of sentencing]; *People v. Tugwell* (1917) 32 Cal.App. 520, 525 [163 P. 508] [public trial].)

Last year the Supreme Court confirmed all this, in *Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 585 [80 Cal.Rptr.3d 83, 187 P.3d 934]: "Civil Code section 3513 makes the doctrine of waiver applicable to all rights and privileges that a person is entitled to, including those conferred by statute, unless otherwise prohibited by specific statutory provisions. [Citation.]" I find no "specific statutory" provision applicable here.

"The purpose of probation is rehabilitation. (*People v. Hackler* (1993) 13 [Cal.App.4th] 1049, 1058 [16 Cal.Rptr.2d 681] . . . .) . . . The courts have repeatedly pointed out that probation is not a right of the defendant but an act of 'grace and clemency' by the court, extended in the hope that the defendant may be rehabilitated. (See *People v. Johnson* (1955) 134 [Cal.App.2d] 140, 143 [285 P.2d 74] ['The purpose and hope are, of course, that through this act of clemency, the probationer may become reinstated as a law-abiding member of society']; *People v. Cortez* (1962) 199 [Cal.App.2d] 839, 844 [19 Cal.Rptr. 50] ['Probation is granted to the end that a defendant may rehabilitate himself, make a responsible citizen out of himself and be obedient to the law'].)" (3 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Punishment, § 502, p. 684.)

Here, an experienced, conscientious, thorough—and yes, stern—trial court exercised its discretion to get this young defendant on the straight and narrow, concluding as follows after describing defendant's implausible story about the gun: "This statement of probation that he accepts responsibility for his actions, in this court's opinion, that's a joke. He hasn't accepted anything. He wasn't truthful with probation. . . . That is so unbelievable. I don't know who he thinks really expects to believe a story like this, but I don't. I don't accept any part of it, and there's obviously a reason he carries this gun. People don't do anything without reasons. The reason is to shoot somebody. That's why he had a loaded gun.

"So I have every justification, if I wish to put him in jail for a while. I don't really know that that would be the best solution here for this defendant. As I said, he's a young man. He obviously has made a mistake, and he's made a couple of mistakes here recently, this mistake, the embezzlement that he is involved in, but it's certainly not too late for him to get things turned around. He doesn't have a serious record. In my opinion, smoking dope isn't going to help any of this. Every person I have ever seen, that sits around smoking dope, goes nowhere. You can't function when you are loaded, and you know, there is a good reason why they call it dope.

"So if he wants to, you know, game the system, which I think is what's really going on here with this medical marijuana for a headache. If he wants to do that, I agree with you, you know, we've got some appellate cases that say he can, I'm going to have second thoughts about his judgment, and that suggests to the Court that he's not very serious about what has occurred or changing things."

Following that, and another conference with his counsel, defendant agreed "to surrender his medical marijuana card and to not smoke medical marijuana while . . . on probation."

I read what happened here as being exactly what happened in *People v. Juarez* (2004) 114 Cal.App.4th 1095 [8 Cal.Rptr.3d 238]. There, in a unanimous opinion which did not even mention *People v. Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545], we affirmed a sentencing order which required the defendant to waive all credit for time served, concluding as follows: "the record demonstrates that the trial judge was fully acquainted with appellant's case and made an informed decision to require the waiver of custody credits as a further incentive to complete his rehabilitation . . . ." (*People v. Juarez, supra*, at p. 1107.) Substitute "use of medical marijuana" for "custody credits," and that is what occurred here.

**KLINE, P. J.,** Dissenting.—The majority finds imposition of the challenged condition was not an abuse of discretion because appellant "specifically agreed [to the condition] at the December 17[, 2008] sentencing hearing" (maj. opn., *ante*, at p. 844), and because appellant had the burden of proving his eligibility to use medical marijuana and failed to sustain it (maj. opn., *ante*, at pp. 848–850). I respectfully disagree.

A sentencing judge has no authority to impose an unlawful condition of probation simply by extracting an "agreement" to it from the defendant. What makes this case unusual is that the trial court—which in appellant's presence told his counsel that if appellant did not "agree" to the condition "he's going to jail, so that's his choice"—induced appellant's "voluntary" acceptance of the condition precisely because of its awareness that the condition was unlawful and the court's apparent assumption that appellant's "agreement" would constitute an enforceable waiver of the right to challenge the lawfulness of the condition. This court's endorsement of that assumption permits imposition of conditions of probation that are unrelated to the crime of which a defendant was convicted, forbids conduct that is not criminal, and requires conduct that has no relationship to a defendant's future criminality. No modern California court has ever done such a thing, which is precedent shattering.

It is of course true that, as *People v. Blakeman* (1959) 170 Cal.App.2d 596 [339 P.2d 202] says, and Justice Richman reminds us, " ' "a defendant may waive rights which exist for his own benefit . . ." ' " (conc. opn., *ante*, at p. 858), and defendants commonly do so as part of a negotiated disposition. But defendants do *not* commonly agree to conditions of probation that lack any legitimate penal function and are therefore invalid under the test set forth in *People v. Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545] (*Lent*). And in the few cases in which, as here, the defendant did submit to such an invalid condition after a timely objection, the waiver has never been used to bar a challenge to the lawfulness of the condition. Indeed, in *People v. Blakeman, supra*, 170 Cal.App.2d 596, the very case Justice Richman cites,

the defendant not only agreed to the banishment condition at issue but *proposed* it; the court did not, however, let that prevent it from striking the condition.

The majority's analysis not only flies in the face of settled case law, but also subordinates the will of the people expressed in an initiative to the incompatible "opinion" of a sentencing judge. The Compassionate Use Act of 1996 (Health & Saf. Code, § 11362.5)[1] (CUA), approved by the voters at the November 5, 1996 election as Proposition 215, was expressly intended to ensure that patients who comply with its terms "are not subject to criminal prosecution or sanction." (§ 11362.5, subd. (b)(1)(B).) As a result of the enactment of the CUA, "the possession and cultivation of marijuana is no more criminal—so long as its conditions are satisfied—than the possession and acquisition of any prescription drug . . . ." (*People v. Mower* (2002) 28 Cal.4th 457, 482 [122 Cal.Rptr.2d 326, 49 P.3d 1067] (*Mower*).) However, the CUA did more than simply decriminalize the use of medical marijuana. As has been pointed out, the Supreme Court's opinion in *Mower* "accurately describes the effect of [the CUA] as creating a form of qualified immunity for the possession of marijuana in compliance with its terms. *This immunity from criminal sanction takes the possession of marijuana and puts it in a special category apart from other legal acts, such as the use of alcohol, that can properly be made a condition of probation.*" (*People v. Tilehkooh* (2003) 113 Cal.App.4th 1433, 1447 [7 Cal.Rptr.3d 226] (conc. opn. of Morrison, J.), italics added (*Tilehkooh*).) Because a condition of probation restricting the lawful use of medical marijuana cannot be deemed to serve a reformative or rehabilitative purpose (*id.* at pp. 1443–1445), as required by Penal Code section 1203.1, subdivision (j) (*People v. Richards* (1976) 17 Cal.3d 614, 619 [131 Cal.Rptr. 537, 552 P.2d 97], disapproved on other grounds in *People v. Carbajal* (1995) 10 Cal.4th 1114, 1126 [43 Cal.Rptr.2d 681, 899 P.2d 67]), the imposition of such a condition on a defendant whose use of marijuana satisfies the conditions of the CUA constitutes an abuse of discretion. If a defendant who timely objects can nevertheless be found to have waived the right to challenge the lawfulness of a condition of probation restricting his or her right to use medical marijuana recommended or approved by a physician because he or she accepted the condition in order to avoid incarceration, so too can most defendants easily be compelled to submit to a condition of probation restricting the use of any prescription drug, regardless whether it serves any reformative or rehabilitative purpose.

My colleagues' supposition that appellant is ineligible to use medical marijuana is not justified by his asserted failure to produce evidence of his eligibility to do so. First of all, appellant *did* produce prima facie evidence of his eligibility to use medical marijuana, and neither the probation department

---

[1] All statutory references are to the Health and Safety Code unless otherwise indicated.

nor the prosecution provided reasonable cause to disbelieve that evidence. Nor did the court provide appellant notice of the need for and a reasonable opportunity to produce further evidence demonstrating that his use of marijuana satisfied the conditions of the CUA. In short, the only pertinent evidence presented in this case indicates appellant's use of marijuana is protected by the CUA, no reliable evidence is to the contrary, and the trial court made no finding that appellant's use of marijuana is not protected.

The dramatic changes in the law conjured by the majority are not only legally untenable and likely to cause considerable mischief, but wholly unnecessary. As I shall explain, if the trial court felt it had reasonable cause to believe appellant was not genuinely eligible to use medical marijuana, as he claimed and his medical marijuana card indicated, it had the ability to address the issue and decide it on the basis of evidence. It failed to do so, however. That failure, which seems to me to have been deliberate, cannot be cured by the tendentious speculations of this court.

## I.

### The Relevant Facts

It is at the outset of analysis necessary to be clear about the facts. Restriction of appellant's use of medical marijuana was first addressed by the court at the December 17, 2008 sentencing hearing. At the commencement of the hearing, the court stated that its "inclination at this point is to follow the presentence report." The report recommended that probation be conditioned on a blanket prohibition of the use of drugs or alcohol. However, it also stated that appellant had an unexpired "Medical Cannabis Patient Identification Card" and said he used marijuana for migraine headaches. The report included a copy of the verified medical marijuana card appellant produced and offered no view as to its validity or invalidity or whether appellant's use of marijuana was protected by the CUA.

When the court inquired whether defense counsel had any comments regarding the recommendations made in the report, counsel objected to the recommendation that probation be conditioned on blanket prohibition of the use of drugs or alcohol and requested that appellant be allowed to continue his lawful use of medical marijuana while on probation. The court responded: "Let me just cut you off right there. If I let him use marijuana, he's going to jail with no ASP [alternative sentence program], so that's his choice. Why don't you talk to him about that."

After a 15-minute break, counsel reported to the court that she had discussed the matter with appellant and he had made a decision. Before revealing the

decision, however, counsel stated that she wanted "to make a record . . . that we would object to any orders ordering him to surrender [his medical marijuana card], or not to consume marijuana, pursuant to [*Tilehkooh*]" in which the court determined that "[a] rehabilitative purpose is not served when the probation condition proscribes the lawful use of marijuana for medical purposes pursuant to [the CUA] any more than it is served by the lawful use of a prescription drug." (*Tilehkooh, supra*, 113 Cal.App.4th at p. 1444.) The Court answered: "Counsel, I'm not going to order it. He is either going to stipulate to it, or I'm not going to do it."

When counsel pointed out that the court was forcing appellant to "make a decision between his prescription medication, and, in essence, his freedom," the court explained its "problem." On the one hand, appellant "had a firearm, with a most implausible explanation for it, one that if he really expects the Court to believe this, he might as well ask me to believe in Santa Claus." Refusing to "believe any part of this, 'I found it in the trash or in the bushes,' " the court stated that "[t]his was a gun that was stolen less than a year ago out of Vacaville. He's got it. A handgun like this is good for one thing, and that's shooting somebody. So if he's in a situation where he needs to have a gun to shoot somebody, he's got real problems going on in his life, and smoking dope isn't helping him. That's the bottom line."

The court emphasized its willingness to grant appellant probation, because "he has . . . almost no criminal history. He's a young man. Obviously, he's got potential, but he keeps smoking dope and carrying firearms, and he's going to have a lot of problems in this life, if he lives very long." The court made clear its "opinion" that "smoking dope isn't going to help [appellant]" and that "[e]very person I have ever seen, that sits around smoking dope, goes nowhere. You can't function when you are loaded, and you know, there is a good reason why they call it dope."

The court also expressed the view that "what's really going on here with this medical marijuana for a headache" was "gam[ing] the system," suggesting judicial disbelief appellant genuinely suffered any affliction for which medical marijuana provided relief. Apparently referring to *Tilehkooh, supra*, 113 Cal.App.4th 1443, the case cited by defense counsel, the court agreed that there were "some appellate cases" allowing persons like appellant to obtain the right to use medical marijuana by "gam[ing] the system," but that if appellant insisted on doing so, "I'm going to have second thoughts about his judgment, and that suggests to the Court that he's not very serious about what has occurred or changing things." At that point, defense counsel stated that appellant would surrender his medical marijuana identification card because, "if he is taken into custody, he will lose . . . his aid and his medical benefits, as well as not be able to enroll in school."

Desirous of hearing directly from appellant, the trial judge then engaged in the following colloquy with appellant:

"THE COURT: Is that what you wish to do, Mr. Moret? Do you wish to agree not to use marijuana while you are on probation?

"THE DEFENDANT: Yes.

"THE COURT: Are you willing to agree not to use marijuana? [¶] *Do you understand that I can't order you not to use marijuana?* Do you understand that?

"THE DEFENDANT: No, I didn't know that, but—

"THE COURT: *Well, your attorney is well-aware of it, and that's what the appellate courts have said. If some doctor says that its okay for you to smoke dope,* then regardless of what you are doing in your personal life, the crimes that you are committing, I'll tell you one thing, that you are not going to smoke dope in jail, and you are not going to smoke dope in state prison, if that's where you end up. They won't allow it there.

"MS. GROGAN [defense counsel]: Your Honor, may I have one moment?

"THE COURT: Yes.

"MS. GROGAN: Your Honor, he understands what he is agreeing to. [¶] Mr. Moret, do you agree to surrender your medical marijuana card and to not smoke marijuana while you are on probation?

"THE DEFENDANT: Yes.

"THE COURT: Okay. I'll accept that." (Italics added.)

Without determining that appellant's use of marijuana was unprotected by the CUA, the court ordered only that appellant "not use marijuana *while you are on probation.*" The court expressed no interest in the validity of appellant's medical marijuana card and never asked him to show that he genuinely suffered migraine headaches for which medical marijuana had been recommended or approved by a physician. State law directs that a state or local law enforcement agency or officer "shall not refuse to accept an identification card," unless the agency or officer "has reasonable cause to believe that the information contained in the card is false or fraudulent, or the card is being used fraudulently." (§ 11362.78.) As I have said, the probation department

provided no such cause and, so far as the record shows, neither has any other law enforcement agency or officer.

As will be seen, none of the "factors" underlying the majority's conclusion that the trial court did not abuse its discretion in fact support its decision. Appellant's "personal situation" does not provide any reason to think his use of medical marijuana is unlawful or related to his offense or future criminality; there is no authority *at all*, let alone "substantial appellate precedent," supporting the imposition of a condition of probation that is unrelated to the defendant's offense or future criminality and restricts lawful conduct; and the 2004 statute Justice Haerle alone relies upon never came into play in the trial court and is inapplicable.

## II.

### A Condition of Probation Restricting a Right Protected by the CUA Serves No Legitimate Penal Purpose

As indicated, appellant objected to the condition as unlawful on the basis of the reasoning and holding in *Tilehkooh, supra*, 113 Cal.App.4th 1433.

The defendant in *Tilehkooh* had been placed on probation for the offense of maintaining a place for the use of a controlled substance. One of the conditions of his probation was not to possess or consume controlled substances unless prescribed by a physician, and to not use or possess any dangerous drugs or narcotics. After he informed his probation officer that he was using marijuana for a medical condition upon the recommendation of his physician, the trial court revoked his probation. The Court of Appeal reversed, concluding, as material, that the CUA provided the defendant a defense, and that revocation of probation for the medical use of marijuana serves no legitimate penal purpose.

In explaining its reasoning, the court emphasized that section 11362.5 (i.e., the CUA) did more than merely decriminalize the possession and use of medical marijuana. Subdivision (b)(1)(A) says the purpose of section 11362.5 is to "*ensure . . . the right to obtain and use marijuana* for medical purposes." Subdivision (b)(1)(B) says that in order to achieve that purpose, it is also necessary "[t]o ensure that patients . . . who *obtain and use* marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution *or sanction*." (Italics added.) As the *Tilehkooh* court observed, "[w]e are directed to give sense to all of the terms of an enactment. To do so requires that we give effect to the purposes of section 11326.5 to ensure the right to obtain and use marijuana. In particular, we must give effect to subdivision (b)(1)(A), which establishes a 'right to obtain and use

marijuana for medical purposes' and which links the right to use marijuana with the prohibition on the imposition of a 'criminal prosecution or sanction.' It is readily apparent that the right to obtain or use marijuana is not 'ensure[d]' if its use is not given protection from the adverse consequences of probation. Since the use of marijuana is not a crime, the term 'prosecution or criminal sanction' must be read to apply to any criminal sanction for the use of marijuana. The immediate candidate is probation, the regulation of which is within the Penal Code provisions on punishment and the violation of which subject a probationer to significant restrictions on his or her liberty. (Pen. Code, § 1203.2.) [¶] Indeed, it would completely frustrate the purpose of section 11362.5 if a violation of probation for the medical use or possession of marijuana is permitted while barring a criminal prosecution for the identical conduct." (*Tilehkooh, supra,* 113 Cal.App.4th at p. 1443.)

In determining that the revocation of probation for the medical use of marijuana serves no rehabilitative purpose, the *Tilehkooh* court began by pointing out that " 'California Courts have traditionally been wary of using the probation system for any nonrehabilitative purpose, no matter how superficially rational.' " (*Tilehkooh, supra,* 113 Cal.App.4th at p. 1444, quoting *People v. Richards, supra,* 17 Cal.3d at p. 621, fn. 4.) The court went on to reason that "[a] rehabilitative purpose is not served when the probation condition proscribes the lawful use of marijuana for medical purposes pursuant to section 11362.5 any more than it is served by the lawful use of a prescription drug. [¶] A probation condition, even if it is not a violation of the criminal law, must be 'reasonably related to the crime of which the defendant was convicted or to future criminality.' [Citation.] However, it ordinarily cannot be said that the treatment of an illness by lawful means is so related." (*Tilehkooh,* at p. 1444.)

The *Tilehkooh* court also noted that probation may be limited by other statutes, pointing out that California courts have upheld the specific limits on probation established by the Substance Abuse and Crime Prevention Act (Pen. Code, § 1210 et seq.) enacted by the voters in 2000 as Proposition 36, citing as examples *People v. Davis* (2003) 104 Cal.App.4th 1443, 1447–1448 [129 Cal.Rptr.2d 48], *In re Mehdizadeh* (2003) 105 Cal.App.4th 995, 1000 [130 Cal.Rptr.2d 98], and *People v. Murillo* (2002) 102 Cal.App.4th 1414, 1418–1421 [126 Cal.Rptr.2d 358]. (See also *Gardner v. Schwarzenegger* (2009) 178 Cal.App.4th 1366 [101 Cal.Rptr.3d 229].) The court saw "no reason to treat the plain language of section 11362.5 differently. It precludes the imposition of a 'criminal sanction' for the use and possession of marijuana and ensures the right to use and possess marijuana when the user satisfies the conditions of section 11362.5. For this reason section 11362.5 provides a defense to a probation revocation based on marijuana possession or use." (*Tilehkooh,* at pp. 1444–1445.) If probation cannot be revoked for the

lawful use of medical marijuana, imposition of a condition restricting its use cannot be permissible in the first place.

The majority attempts to contain the reasoning of *Tilehkooh* by declaring that the imposition of a probation condition is not a " 'criminal sanction' " within the meaning of the CUA, and by emphasizing that the *Tilehkooh* court held only "that a *revocation* of probation based on the use of marijuana was such a sanction and therefore subject to the *defense* provided by [the CUA]." (Maj. opn., *ante*, at p. 856.) This strained argument cannot succeed. "The essence of probation is the *condition*—a judicially imposed restriction upon the convict's actions after release. The offender's life is closely supervised by a probation officer; his breach of any of the restrictions may lead to revocation of the limited grant of freedom and imposition of the more coercive penalty prescribed for the crime." (Note, *Judicial Review of Probation Conditions* (1967) 67 Colum. L.Rev. 181, fn. omitted.) If, as the majority acknowledges, probation cannot be revoked for violation of a probation condition restricting the use of marijuana that complies with the requirements of the CUA (because it serves no reformative or rehabilitative purpose), imposition of the condition is pointless. All it accomplishes is the placement of a legally unwarranted cloud over a probationer's conduct.

Ignoring the reasoning of *Tilehkooh*, the majority suggests in a footnote that it may be inconsistent with that of *People v. Balestra* (1999) 76 Cal.App.4th 57, 68–69 [90 Cal.Rptr.2d 77] (*Balestra*) and *People v. Bianco* (2001) 93 Cal.App.4th 748, 752–754 [113 Cal.Rptr.2d 392] (*Bianco*), but fails to explain why. (Maj. opn., *ante*, at p. 853, fn. 12.) *Balestra* does not involve a probation condition restricting rights under the CUA or otherwise invalid under the *Lent* test. The language of the majority opinion in *Bianco* that my colleagues rely upon does conflict with the later decision of the same court in *Tilehkooh*, insofar as it approves a condition of probation restricting the use of medical marijuana on the grounds that marijuana use is a crime and the restriction was reasonably related to the defendant's marijuana offense. However, as pointed out in *Tilehkooh, Bianco* preceded the Supreme Court's opinion in *Mower.* (*Tilehkooh, supra,* 113 Cal.App.4th at p. 1447.) Justice Morrison, who wrote the majority opinion in *Bianco*, was a member of the unanimous panel of the same court in *Tilehkooh.* In his separate concurring opinion in *Tilehkooh*, Justice Morrison acknowledges that, as Presiding Justice Scotland indicated in a separate opinion dissenting in part from the majority opinion in *Bianco*, and as *Mower* subsequently made clear, the CUA creates a qualified immunity that "takes the possession of marijuana and puts it in a special category apart from other legal acts, such as the use of alcohol, that can properly be made a condition of probation." (*Tilehkooh*, at p. 1447 (conc. opn. of Morrison, J.).) It is also worth noting that the appellants in *Bianco* and *Tilehkooh* had both been convicted of or charged with marijuana offenses, so that a condition of probation prohibiting them

from possessing or using marijuana was in some sense related to their criminal acts. That cannot be said of appellant here, who has never been convicted or even charged with a marijuana or any other drug offense.

Indeed, the trial court's explanation of how the use of medical marijuana while on probation would interfere with appellant's reformation and rehabilitation utterly ignores the CUA. The only explanation offered by the trial court—that "[e]very person I have ever seen, that sits around smoking dope, goes nowhere . . . [and] [y]ou can't function when you are loaded . . ."— would justify restriction of the lawful use of medical marijuana in every case. The theory that led the sentencing court to impose the challenged condition is not shared by the voters who enacted the CUA. If the question were whether I agreed with that theory, I would, like Justice Holmes, "study it further and long before making up my mind. But I do not conceive that to be my duty, because I strongly believe that my agreement or disagreement has nothing to do with the right of a majority to embody their opinions in law." (*Lochner v. New York* (1905) 198 U.S. 45, 75 [49 L.Ed. 937, 25 S.Ct. 539] (dis. opn. of Holmes, J.).) A sentencing court may disagree with the aim and directives of the CUA, but it cannot defy them.

## III.

### No Evidence Shows That Appellant's Use of Medical Marijuana Is Not in Accordance with and Protected by the CUA

In *People v. Peterson* (1973) 9 Cal.3d 717 [108 Cal.Rptr. 835, 511 P.2d 1187] (*Peterson*), the foundational California decision regarding the use of facts contained in the probation report, Chief Justice Wright, speaking for a unanimous court, stated as follows: "Conceding that a [sentencing] judge may consider other criminal conduct even if uncharged, . . . there must be some substantial basis for believing such information is reliable . . . [.] [A] 'rational penal system must have some concern for the probable accuracy of the informational inputs in the sentencing process' [citation]." (*Peterson, supra*, 9 Cal.3d at p. 727.) Where "[t]he court afforded defendant a lengthy and full hearing, patiently heard defendant's numerous witnesses, considered his extensive arguments and carefully weighed such matters in resolving issues consistent with creditable information before it," there is no denial of federal constitutional rights, nor "denial of parallel rights guaranteed under article I, section 19, or other provisions of the California Constitution." (*Peterson*, at p. 730.)

*People v. Peck* (1996) 52 Cal.App.4th 351 [61 Cal.Rptr.2d 1] (*Peck*), is also instructive on the evidentiary issue. The defendant in that case, who was

a member of a church that used marijuana as a sacrament (and not for medicinal purposes) and smoked marijuana three times daily, was convicted of illegally transporting marijuana. In approving a condition of probation prohibiting him from possessing and using marijuana, on the ground that it served the dual purposes of rehabilitation and public safety, the appellate court emphasized the evidentiary support for the condition in the record. "The prosecution's expert testified that marijuana impairs driving [and the] [d]efendant's expert, a medical doctor and professor of pharmacology, agreed. He stated marijuana decreases motor abilities in many people, causing difficulty in depth perception and an altered sense of timing which are particularly hazardous during driving. His opinion was that individuals who ingest marijuana and become intoxicated 'shouldn't drive cars.' "[2] (*Peck, supra*, 52 Cal.App.4th at p. 363.)

The factual inquiries conducted in *Peterson* and *Peck* have no counterpart in this case. The absence of inquiry and evidence here is comparable to that in *In re Bushman* (1970) 1 Cal.3d 767 [83 Cal.Rptr. 375, 463 P.2d 727], disapproved on other grounds in *Lent, supra*, 15 Cal.3d at page 486, footnote 1, where the court struck a condition of probation requiring the defendant to obtain psychiatric counseling. Pointing out that a condition of probation is invalid if it fails the *Lent* test, Chief Justice Traynor relied upon the fact that "[t]here is no evidence to support the trial court's conclusion that petitioner needed psychiatric care. No expert witnesses testified to his mental condition. Neither the prosecution nor the court questioned any witnesses about that condition. Under these circumstances the condition as to psychiatric care had no relationship to the crime of which petitioner was convicted. Furthermore, without any showing that mental instability contributed to that offense, psychiatric care cannot reasonably be related to future criminality." (*In re Bushman*, at p. 777; see also *People v. Bauer* (1989) 211 Cal.App.3d 937, 943–944 [260 Cal.Rptr. 62].) The same can be said in this case with respect to the court's restriction on appellant's use of medical marijuana.

There is no evidence or reason to think appellant's use of marijuana was related to his offense or uncharged embezzlement or to any other questionable behavior, and he has never been charged with a marijuana offense or any other drug offense. No witness disputed appellant's statement that he suffers migraine headaches, which is specified in the CUA as an illness for which marijuana provides relief. (§ 11362.5, subd. (b)(1)(A).) There is also no evidence that appellant's use of marijuana was not recommended or approved by a physician to relieve the pain caused by appellant's migraine headaches. Nor did the probation department or the prosecution question appellant's

---

[2] As I explain, *post*, at page 872, footnote 4, driving while under the influence of marijuana, which can be a crime even if the marijuana is used for medical purposes, could have been restricted as a tailored condition of appellant's probation.

eligibility to use medical marijuana under the CUA. Finally, there is no evidence appellant used medical marijuana at times and places presenting a threat to public safety.

The majority, however, takes the view that appellant had the responsibility and failed to demonstrate his entitlement to use medical marijuana. The majority states, "no evidence or argument was offered, or for that matter even hinted at, to support appellant's claims that he (1) had migraine headaches, (2) had consulted a doctor regarding them, and (3) used marijuana only at bedtime four times a week. Thus, neither the letters from appellant's parents, pastor, and a neighbor, nor even his own letters to the court, mention his use of marijuana, much less the reasons for it, i.e., alleged migraine headaches. Nor did appellant's counsel offer to supply any such evidence to the court. Indeed, the *only evidence* anyplace in the record on this subject was a copy of the 'recently obtained' medical marijuana card attached at the end of the deputy probation officer's report." (Maj. opn., *ante,* at p. 848.)

I recognize that medical use of marijuana under the CUA is "an affirmative defense to be proven by the defendant at trial" in a criminal prosecution (*People v. Fisher* (2002) 96 Cal.App.4th 1147, 1152 [117 Cal.Rptr.2d 838]), but so too is it an affirmative defense to the imposition of any other criminal sanction, as *Tilehkooh* shows. And the majority completely ignores the significance of appellant's medical marijuana card. The Medical Marijuana Program (§§ 11362.7–11362.9; hereafter MMP), enacted in 2003, provides for persons "who qualify for exemption from California's statutes criminalizing certain conduct with respect to marijuana . . . to apply for and obtain an identification card verifying their exemption." (*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 808 [81 Cal.Rptr.3d 461].) "Among the MMP's purposes was to ' "facilitate the prompt identification of qualified patients and their designated primary caregivers in order to avoid unnecessary arrest and prosecution of these individuals and provide needed guidance to law enforcement officers." ' ([*People v. Wright* (2006)] 40 Cal.4th [81,] 93 [51 Cal.Rptr.3d 80, 146 P.3d 531].) To that end, the MMP included provisions establishing a voluntary program for the issuance of identification cards to persons qualified to claim the exemptions provided under California's medical marijuana laws. (§§ 11362.7, subd. (f), 11362.71.) Participation in the identification card program, although not mandatory, provides a significant benefit to its participants: they are not subject to arrest for violating California's laws relating to the possession, transportation, delivery or cultivation of marijuana, provided they meet the conditions outlined in the MMP. (§ 11362.71, subd. (e).)" (*County of San Diego v. San Diego NORML,* at p. 810.) "[T]he MMP's identification card system is a discrete set of laws designed to confer distinct protections under California law that the CUA does *not* provide without limiting the protections the CUA *does* provide. For example, unlike the CUA, which did not immunize medical marijuana users

from arrest but instead provided a limited 'immunity' defense to prosecution under state law for cultivation or possession of marijuana (see [*Mower, supra,*] 28 Cal.4th 457, 468–469 . . .), the MMP's identification card system is designed to protect against unnecessary arrest. (See § 11362.78 [law enforcement officer must accept the identification card absent reasonable cause to believe card was obtained or is being used fraudulently].)" (*County of San Diego v. San Diego NORML,* at p. 830.)

The identification card system under the MMP thus provides the holder of such a card protection beyond that available to other persons who may be entitled to use medical marijuana. The identification card serves as prima facie evidence of a right to protection under the CUA. Had appellant not possessed a medical marijuana card, it would have been incumbent upon him to demonstrate to the court that he was entitled to use medical marijuana. But the identification card issued to appellant under laws intended to facilitate protection of authorized medical marijuana users put an onus on the prosecution and the court to identify some reasonable cause for believing the card was not valid. The court was not free to ignore the card altogether, as it did.

The majority upholds the trial court's decision in large part because it shares the trial court's doubts about appellant's credibility, which led it to question " '[this] medical marijuana for a headache' claim." (Maj. opn., *ante,* at p. 848.) Because nothing in the CUA condones the use of marijuana for nonmedical purposes, legitimate doubts about appellant's credibility and possible "gam[ing] the system" would certainly have justified judicial inquiry into the validity of his medical marijuana card and eligibility to use medical marijuana. The court could have treated appellant's request to use medical marijuana while on probation as a request pursuant to section 11362.795, subdivision (a)(1), for the court to "confirm" that he is allowed by the CUA to use marijuana for medicinal purposes, and refuse to so "confirm" if it found his use was not in compliance with the CUA; in which case the court's decision and the reasons for the decision would have to be stated on the record and an entry stating those reasons made in the minutes of the court. (§ 11362.795, subd. (a)(2).) If the court refused to "confirm" that appellant was qualified to use medical marijuana, it certainly could have imposed the challenged condition.

But the court did not employ that procedure, and the record provides no evidentiary basis for assuming appellant's medical marijuana card was not valid and his use of marijuana does not satisfy the conditions of the CUA.[3]

---

[3] The majority strains to produce doubt about the validity of appellant's medical marijuana card by suggesting that its recent date indicates it was obtained for improper reasons. However, medical marijuana cards must be renewed annually (§ 11362.745, subd. (a)), and there is no reason to assume from the date of the card that it was not a renewed card, or that appellant

The trial court's suspicion that appellant does not suffer migraine headaches and obtained his medical marijuana card falsely or fraudulently cannot be treated as an adjudication. The diagnosis and treatment of medical problems are functions assigned to the medical profession, not criminal court judges; and such judges cannot make factual determinations except on the basis of sufficient evidence at hearings comporting with due process of law. Nor, because he is not a medical expert, can a trial judge make a factual determination based on no more than his own "opinion" that a defendant's use of medical marijuana is for some undisclosed reason inimical to his reformation and rehabilitation. The trial judge stated that if appellant insisted upon using medical marijuana, "I'm going to have second thoughts about his judgment, and that suggests to the Court that he's not very serious about what has occurred or changing things." It is not *appellant's* judgment regarding medical marijuana that the court should have focused on, however, but that of a physician. If, as appellant claims and his medical marijuana card indicates, his use of medical marijuana was recommended by a physician for the relief of pain, he cannot be sent to prison or jail for following that advice.[4]

obtained the card falsely or used it fraudulently. Further, neither the probation department nor the district attorney ever suggested that the date on appellant's card indicated it may have been fraudulently obtained, and the court never focused its attention on the date or validity of the card.

[4] Not all restrictions on the use of medical marijuana are barred by the CUA, because by its own terms nothing in the act "shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others" nor "to condone the diversion of marijuana for nonmedical purposes." (§ 11362.5, subd. (b)(1)(C)(2).) Thus, for example, an offender believed to have used medical marijuana at a place or in a manner injurious to the health or offensive to the senses of any considerable number of persons, or which obstructs the free passage or use of any public park, can be restricted from doing so as a condition of probation, because preexisting law criminalizes such conduct. (Pen. Code, § 370; see also *City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153 [100 Cal.Rptr.3d 1] (*City of Claremont*).) Similarly, if a sentencing court has reason to believe an offender may drive a vehicle while under the influence of medical marijuana it can restrict him or her from doing so, because the fact that a person charged under the Vehicle Code is entitled to use a drug under the laws of this state does not constitute a defense to such a violation. (Veh. Code, § 23630; see also *Peck, supra*, 52 Cal.App.4th 351, 362–363.) The condition imposed in this case is not so narrowly tailored, however, as it restricts any and all use of marijuana while appellant is on probation, regardless whether it is done for a medical purpose and the manner in which it is used.

Given the circumstances of this case, I need not address the interesting question whether a blanket restriction on the lawful use of medical marijuana or any other prescription drug can ever be imposed as a condition of probation; as where a prescribed medication is persuasively shown to make a particular defendant more likely than he or she would otherwise be to commit criminal acts, or where there is evidence use of the medication otherwise obstructs the reformation and rehabilitation of the defendant. It is enough for me to affirm that, at a minimum, a condition of probation restricting the use of a medication recommended or approved by a physician would have to be based on evidence demonstrating that the restriction served a legitimate penal purpose comparable to that relied upon in *Peck, supra*, 52 Cal.App.4th 351, which involved the use of marijuana for purposes that were not medicinal.

Nor can it be viewed as significant that appellant's supporters did not mention his use of medical marijuana in their statements to the court, as there was no reason for them to be aware of any need to explain or justify his use of medical marijuana to the court. Appellant produced a facially valid medical marijuana card, which is prima facie evidence of eligibility to use medical marijuana (§ 11362.78), the prosecution never claimed he was ineligible to use medical marijuana, and the court never placed appellant on notice of any need to further demonstrate his eligibility. Rather, the court finessed the issue by insisting upon appellant's "voluntary" acceptance of the restriction. In effect, the court improperly rendered it irrelevant whether appellant's use of marijuana satisfied the conditions of the CUA. Additionally, given the depth of the court's expressed antipathy to *any* use of "dope," appellant's insistence upon an opportunity to demonstrate that his use of marijuana was protected by the CUA would almost certainly have further antagonized the court.

## IV.

### Appellant's "Agreement" to the Condition Does Not Constitute an Enforceable Waiver of the Right to Challenge Its Unlawfulness

The challenged condition cannot be sanctified by appellant's "agreement" to it at the sentencing hearing. Preliminarily, as all familiar with the criminal justice system are well aware, "[i]n the vast majority of cases, the offender will agree to almost any condition of probation in order to avoid extended incarceration." (Polonsky, *Limitations Upon Trial Court Discretion in Imposing Conditions of Probation* (1973–1974) 8 Ga. L.Rev. 466, 486.) Courts that have analogized the transaction between the defendant and the trial court to a "bargain" or "contract" to act do so improperly, it is said, "because the analogy is not complete. The law of contract is posited upon the notion of an equality of bargaining position between parties which culminates in a voluntary agreement. However, defendants are not in a position to bargain with a court *because virtually any condition is preferable to jail.*" (Best & Birzon, *Conditions of Probation: An Analysis* (1962–1963) 51 Geo. L.J. 809, 832–833, italics added.)

As one court has explained, reviewing courts should not use waiver theory to avoid the need to inquire into the validity of a condition claimed to be unlawful on the ground the defendant consented to it because such consent "is a 'hypothetical' or a 'nominal' rather than real consent. The overhanging Damoclean sword of imprisonment prevents a true consent. The 'waiver' concept also fails to take into account the duty, the authority, nondelegable, of the trial court to imprison or grant probation on lawful terms. That power

does not, cannot, rest on either real or nominal 'waiver' or 'consent' by the to-be-sentenced defendant. [Citation.] However, by accepting the benefits of probation a defendant does not waive the right to urge the invalidity of an improper, a void, condition on direct appeal from that judgment or on habeas corpus (*In re Bushman*[, *supra*,] 1 Cal.3d 767, 776 . . . ; *People* v. *Dominguez* [(1967)] 256 Cal.App.2d 623, 629 [64 Cal.Rptr. 290]; *In re Allen* [(1969)] 71 Cal.2d 388, 389 [78 Cal.Rptr. 207, 455 P.2d 143]) . . . ." (*People v. Keller* (1978) 76 Cal.App.3d 827, 832–833, fn. 2 [143 Cal.Rptr. 184].)[5]

Our Supreme Court has made clear that, where, as here, a proper objection was made at the sentencing hearing, "[a] criminal defendant need not reject probation and accept incarceration in order to seek review of an allegedly unreasonable or invalid search condition . . . ." (*People v. Woods* (1999) 21 Cal.4th 668, 678, fn. 5 [88 Cal.Rptr.2d 88, 981 P.2d 1019]; see *Welch, supra*, 5 Cal.4th at pp. 236–237.) As *Welch* framed the same point, "the law does not force a defendant either to accept probation under conditions he deems intolerable, or to reject probation and accept incarceration *in order to seek review of an allegedly invalid condition*." (*Welch*, at pp. 236–237, italics added.) Appellant in the present case *did* timely object to the condition he now challenges.[6]

The majority finds support for its decision in the statement in Justice Arabian's concurring opinion in *Welch* that, "[i]f the trial court determines in the proper exercise of its discretion that it cannot achieve the rehabilitative goals of probation without imposing an objectionable condition, then it will be fully justified in denying probation on that basis if the defendant declines to accept it." (*Welch, supra*, 5 Cal.4th at p. 239 (conc. opn. of Arabian, J.).) (Maj. opn., *ante*, at pp. 852–853, fn. 11.) The critical premises of this statement are that the trial court's decision is a "proper exercise of its discretion" and that the imposed condition is necessary to "achieve the rehabilitative goals of probation." The statement thus offers no support for the

---

[5] *People v. Keller, supra*, 76 Cal.App.3d 827, was disapproved by *People v. Welch* (1993) 5 Cal.4th 228, 237 [19 Cal.Rptr.2d 520, 851 P.2d 802] (*Welch*), to the extent it suggests that the reasonableness of a probation condition can be challenged on appeal in the absence of an objection in the trial court.

[6] Justice Arabian, whose concurring opinion in *Welch* was joined in by Justice Kennard, suggests appellant's challenge could be made even if he had not objected below, because he challenges the *unlawfulness*, not merely the unreasonableness, of the condition. (*Welch, supra*, 5 Cal.4th at p. 240 (conc. opn. of Arabian, J.).) Justice Arabian noted that, "[a]s the majority imply, in most instances the waiver rule will apply because the challenged probationary condition is simply unreasonable, *not unlawful*. [Citation.] Nevertheless, *when legal error is demonstrable*, countervailing considerations may perforce circumscribe the scope of the rule, and *the absence of an objection may not always insulate the condition from appellate review or collateral attack*." (*Id*. at p. 240 (conc. opn. of Arabian, J.), italics added.)

proposition that a trial court may require a defendant to accept an *unlawful* condition of probation that is *not* related to the rehabilitative goals of probation.

The unfair waiver theory adopted by the majority is not, as my colleagues say, authorized by *People v. Bravo* (1987) 43 Cal.3d 600 [238 Cal.Rptr. 282, 738 P.2d 336] (*Bravo*), by our opinion in *People v. Brewer* (2001) 87 Cal.App.4th 1298 [105 Cal.Rptr.2d 293] (*Brewer*), or by any other California case. (Maj. opn., *ante*, at pp. 851–852.) Our high court has never suggested that a condition of probation that has no relationship to the crime of which the defendant is convicted, relates to conduct that is not itself criminal, and requires or forbids conduct that is not reasonably related to future criminality (*Lent, supra*, 15 Cal.3d at p. 486) can nevertheless be legitimated by an "agreement" of the sort appellant entered into with the trial court here.

*Bravo* did not involve a claim that the search condition at issue was invalid under the *Lent* test, and there was no objection to the condition at the time of sentencing. On the contrary, the defendant overtly acknowledged that he was subject to the challenged search as a condition of probation, and made no claim that the waiver effected by his acceptance of that condition was involuntary; nor did he even claim that the search condition was unreasonable. (*Bravo, supra*, 43 Cal.3d at pp. 602–604.) His very different argument was that, notwithstanding the reasonableness and lawfulness of the search condition, "a 'rule of reasonableness' applied, permitting a search only if there were reasonable cause to believe he was currently involved in criminal activity." (*Id.* at p. 604.) *Bravo* holds that a probationer who agreed as a condition of probation to submit to warrantless searches could not subsequently challenge such a search on the basis that it was conducted without reasonable cause to believe he was currently involved in criminal activity. In other words, the holding of *Bravo* is merely that *the scope of the defendant's consent to the search condition encompassed consent to a search without reasonable suspicion of criminal activity.* (*Id.* at pp. 605–610.) The situation in *Bravo* is thus completely different from that here, where appellant is attacking the lawfulness of the challenged condition and made a timely objection, and the voluntariness of his consent to the condition is highly questionable. Nothing in *Bravo* suggests that a defendant cannot challenge a condition of probation invalid under the *Lent* test because he or she accepted it in order to avoid the more onerous alternative of prison or jail. On the contrary, the *Bravo* court expressly stated that the defendant's consent would not have permitted a search "conducted for reasons unrelated to the rehabilitative and reformative purposes of probation or other legitimate law enforcement purposes" such as for "harassment or . . . for arbitrary or capricious reasons." (*Bravo*, at p. 610; see *People v. Robles* (2000) 23 Cal.4th 789, 797 [97 Cal.Rptr.2d 914, 3 P.3d 311] ["searches that are undertaken pursuant to a probationer's advance consent must be reasonably related to the purposes of

probation"].) As *Mower* and *Tilehkooh* teach, a condition of probation restricting the lawful use of marijuana upon the recommendation or approval of a physician cannot be deemed to serve rehabilitative and reformative purposes.

The general principle underlying *Bravo* and our opinion in *Brewer*[7] is simply that a defendant can be required to give up statutory or constitutional rights as a condition of probation. (*Bravo, supra*, 43 Cal.3d at pp. 608–609; *Brewer, supra*, 87 Cal.App.4th at pp. 1311–1312.) This settled principle provides no support for the proposition that an offender's acceptance of an unlawful condition constitutes an enforceable waiver of the right to challenge the condition on the ground it serves no legitimate penal purpose.

Except for *People v. Juarez* (2004) 114 Cal.App.4th 1095 [8 Cal.Rptr.3d 238] (*Juarez*), which is later discussed, none of the other cases relied upon by my colleagues in which a condition of probation was challenged (*People v. Olguin* (2008) 45 Cal.4th 375 [87 Cal.Rptr.3d 199, 198 P.3d 1]; *People v. Jungers* (2005) 127 Cal.App.4th 698 [25 Cal.Rptr.3d 873]; *In re York* (1995) 9 Cal.4th 1133 [40 Cal.Rptr.2d 308, 892 P.2d 804]; *In re Tyrell J.* (1994) 8 Cal.4th 68 [32 Cal.Rptr.2d 33, 876 P.2d 519], overruled on other grounds in *In re Jaime P.* (2006) 40 Cal.4th 128, 139 [51 Cal.Rptr.3d 430, 146 P.3d 965]; *People v. Medina* (2007) 158 Cal.App.4th 1571 [70 Cal.Rptr.3d 413]; *Balestra, supra*, 76 Cal.App.4th 57) suggest that the appellant's waiver barred him from challenging the condition under the *Lent* test, because in those cases the reviewing courts found the challenged condition valid only after applying that test.

Take, for example, *People v. Olguin, supra*, 45 Cal.4th 375, in which the challenged condition required the defendant to notify his probation officer of the presence of any pets in his house. The defendant argued that the condition "is not reasonably related to future criminality, limits his fundamental rights, and is unconstitutionally overbroad." (*Id.* at p. 378.) The Supreme Court disagreed. Concluding that the condition did not implicate any fundamental or constitutional right, the court explained why it was reasonably related to future criminality and satisfied the *Lent* test of validity despite the unusual facts that it did not relate to the offense and the ownership of pets was not itself criminal: "The condition requiring notification of the presence of pets is reasonably related to future criminality because it serves to inform and

---

[7] Contrary to the intimation in the majority opinion (maj. opn., *ante*, at p. 851), our opinion in *Brewer, supra*, 87 Cal.App.4th 1298, also has little to do with the issues presented in this case. The defendant in *Brewer* was ordered to provide blood and saliva samples as a condition of probation on the authority of Penal Code section 296.1. We concluded that that statute did not permit imposition of the challenged condition but, because the condition was authorized by another statute, the error was harmless. The only aspect of *Brewer* at all relevant to this case is our recitation of the *Lent* test, which we held was satisfied.

protect a probation officer charged with supervising a probationer's compliance with specific conditions of probation. As noted above, to ensure that a probationer complies with the terms of his or her probation and does not reoffend, a probation officer must be able to properly supervise that probationer. Proper supervision includes the ability to make unscheduled visits and to conduct unannounced searches of the probationer's residence. Probation officer safety during these visits and searches is essential to the effective supervision of the probationer and thus assists in preventing future criminality. *Therefore, the protection of the probation officer while performing supervisory duties is reasonably related to the rehabilitation of a probationer for the purpose of deterring future criminality.*" (*Olguin,* at p. 381, italics added.) There is no such nexus in the present case. The significant "holding" of the *Olguin* court is not its reiteration of the *Lent* rule, as Justice Haerle says (maj. opn., *ante,* at p. 846, fn. 4), but its conclusion that the challenged condition passed muster under that rule.

In every one of the other cases cited by the majority, the opinion also makes clear that the challenged condition was in some fashion reasonably related to the reformation and rehabilitation of the defendant and therefore valid. (*People v. Jungers, supra,* 127 Cal.App.4th 698 at p. 703 [condition was "directly related to [defendant's] criminal offense and reasonably related to future criminality"]; *In re York, supra,* 9 Cal.4th at pp. 1150–1151 [condition of own recognizance release deemed comparable to a valid condition of probation because it is " 'reasonably related to the [defendant's] prior criminal conduct and [was] aimed at deterring or discovering subsequent criminal offenses' "]; *In re Tyrell J., supra,* 8 Cal.4th at p. 87 [search condition served goal of deterring future misconduct and furthered rehabilitation of minor]; *People v. Medina, supra,* 158 Cal.App.4th at p. 1576 [search condition "aid[ed] in deterring further offenses by the probationer and in monitoring compliance with the terms of probation"]; *Balestra, supra,* 76 Cal.App.4th at pp. 68–69 [no-alcohol condition is reasonable where defendant has an "alcohol problem"].)

In *People v. Johnson* (2002) 28 Cal.4th 1050 [123 Cal.Rptr.2d 700, 51 P.3d 913], the only case relied upon by Justice Richman that is arguably relevant,[8] a defendant who pled guilty to first degree burglary was sentenced to the upper term of six years in state prison, execution of that sentence was suspended, and the defendant placed on probation conditioned upon his agreeing to waive all custody credits to which he was entitled, under Penal Code section 2900.5, for time served in county jail and in a residential drug

---

[8] None of the three other cases cited by Justice Richman (*People v. Manriquez* (1922) 188 Cal. 602 [206 P. 63]; *People v. Valdez* (1947) 82 Cal.App.2d 744 [187 P.2d 74]; *People v. Tugwell* (1917) 32 Cal.App. 520 [163 P. 508]) involved a condition of probation or even the denial of a right as to which the defendant was genuinely prejudiced.

treatment facility. On appeal, the defendant argued that his waiver was unenforceable because the trial court had imposed the maximum term of imprisonment and thus, if he violated probation and was sent to state prison, his total time in custody would exceed that allowed by law. (28 Cal.4th at p. 1055.) Invoking the *Lent* rule that probation conditions must serve some legitimate purpose relating to the offender or the offense, the defendant argued "that the only purpose served by conditioning his probation upon a waiver of past and future custody credits was an illegitimate one-exposing him to the possibility of serving more than six years in custody for an offense with a six-year maximum sentence." (28 Cal.4th at p. 1056.) The Supreme Court disagreed.

As Justice Kennard explained, "the trial court required defendant's waiver not just of credits for time spent at the Turning Point treatment program but also for time spent in county jail, both before sentencing and while awaiting placement in the program. The waiver was to give defendant *an incentive to successfully complete the residential treatment program based on the knowledge that failure to do so would expose him to imposition of the six-year prison sentence unreduced by previously served custodial time.* Here, defendant, who admittedly suffers from drug dependency, committed a serious residential burglary warranting maximum punishment, but the trial court's grant of probation gave him a chance to get off drugs and to avoid state prison. *On these facts, we cannot say that the trial court's requirement of a waiver of custody credits as a condition of granting probation lacked any legitimate penal function.*" (*People v. Johnson, supra,* 28 Cal.4th at pp. 1056–1057, italics added.) Because the condition imposed in *Johnson* provided the defendant "sufficient incentive to comply with the other terms of probation and to successfully complete the rehabilitation program" (*id.* at p. 1057), it passed the *Lent* test and the defendant's waiver was enforceable.

Our opinion in *Juarez, supra,* 114 Cal.App.4th 1095, which sustained a condition similar to that upheld in *Johnson,* relied on the portions of the *Johnson* opinion just quoted. Justice Richman says he "read[s] what happened here as being exactly what happened in [*Juarez*]," and emphasizes that *Juarez* "did not even mention [*Lent*] . . . ." (Conc. opn., *ante,* at p. 860.) Justice Richman fails to appreciate that, as I have said, *Juarez* relies almost entirely on the reasoning of *Johnson,* which points to *Lent* (and also *People v. Carbajal, supra,* 10 Cal.4th 1114, 1121, which cites *Lent*) as positing the relevant "rule that probation conditions must serve some legitimate purpose relating to the offender or the offense." (*People v. Johnson, supra,* 28 Cal.4th at p. 1056.) Justice Richman's statement "Substitute 'use of medical marijuana' for 'custody credits,' and that is what occurred here" (conc. opn., *ante,* at p. 860) would be correct only if, like a restriction on custody credits, a restriction on the use of medical marijuana had a legitimate penal purpose. It does not.

As I have explained, the condition challenged in this case fails the *Lent* test. Appellant's use of marijuana appears to satisfy the conditions of the CUA, such use of marijuana is not criminal, and the record provides no basis upon which to conclude that restriction of his use of medical marijuana serves any reformative or rehabilitative purpose. Because the challenged condition has no legitimate penal purpose, appellant's "voluntary" acceptance of it cannot constitute an enforceable waiver.

## IV.

### The Different and Novel Waiver Theories Advanced by the Attorney General Are Untenable

The majority's analysis of this case is very different from that of the Attorney General. To begin with, like the district attorney, the Attorney General never suggests that appellant's use of marijuana fails to satisfy the conditions of the CUA. Recognizing that marijuana use in compliance with the CUA is not criminal conduct, the Attorney General urges that the CUA nevertheless "did not completely abrogate the trial court's discretion when placing conditions on probation." According to the Attorney General, "[t]he requirement that appellant choose between the abandonment of his marijuana use during the term of probation or deprivation of the drug during a term in jail was reasonably related to appellant's rehabilitation and the protection of the public" or, alternatively, "the trial court cannot be said to have abused its discretion in providing defendant the opportunity to continue using medicinal marijuana other than during his jail term *at his choice.*" This argument is incomprehensible.

First of all, the Attorney General offers no satisfactory explanation as to how the restriction on medical marijuana is reasonably related to appellant's rehabilitation and the protection of the public. The Attorney General's conclusionary statement that the trial court in this case "articulated a well-reasoned summary of the facts and circumstances" that led to the condition is inexplicable. The factor that led to the condition was no more than the trial judge's expressed "opinion" that "smoking dope isn't going to help [appellant]" and that "[e]very person I have ever seen, that sits around smoking dope, goes nowhere." Insofar as this opinion applies to medical marijuana, it conflicts with the stated purpose of the CUA.

Furthermore, the choice "between the abandonment of [appellant's] marijuana use during the term of probation or deprivation of the drug during a term in jail" is no choice at all. Neither of the alternatives to acceptance of a medical marijuana restriction presented appellant (namely, prison or jail)

offered him "the opportunity to continue using medical marijuana," as the Attorney General seems to think.

Finally, while the CUA does not explicitly address the conditions that may be placed on probation, it clearly declares that no "criminal prosecution *or sanction*" may be placed on the use of marijuana it authorizes. (§ 11362.5, subd. (b)(1)(B).) The Attorney General does not explain why a judicial restriction on the use of medical marijuana is not such a criminal sanction nor why, contrary to *Tilehkooh*, such a restriction is not barred by the CUA.

The Attorney General does not take issue with the reasoning and holding of *Tilehkooh*, but finds it distinguishable, arguing that "[i]n *Tilehkooh*, the court noted that the reason the defendant was placed on supervised probation was for maintaining a place for the use of a controlled substance and the record failed to convey what were the circumstances of the offense. [Citation.] *Here, by contrast, the record clearly indicates the circumstances of the offense and the exact substance with which appellant was involved. Further, the trial court articulated a well-reasoned summary of the facts and circumstances that led to the probation order.*"

This argument is as weak as the others the Attorney General advances. As the unknown circumstances of the offense for which the defendant in *Tilehkooh* was on probation were not relevant to the issue on appeal and the absence of this evidence did not factor into the court's analysis, the significance of the Attorney General's distinction is unclear. In any event, the Attorney General's description of *Tilehkooh* as having "merely found a probation condition, which prohibited the lawful use of a prescription drug, did not serve a rehabilitative purpose where there is no claim that the probationer's conduct endangered others or that he diverted marijuana for nonmedical purposes," also accurately describes the situation in this case. In fact, the defendant in *Tilehkooh* was convicted of a drug offense and had a history of marijuana use, making the absence of rehabilitative purpose even more apparent in the present case, since appellant was not convicted of a drug offense.

The Attorney General's statement that "appellant cannot satisfy the elements of the *Lent* test" because "[t]he court contemplated that only after appellant completely dissociated from the marijuana subculture would it be likely that he will not commit crimes in the future" begs the fundamental questions, which are how appellant's continued use of medical marijuana in a manner that satisfies the conditions of the CUA relates to future criminality (which is a factual question) and, if that can be shown, how a restriction of such use can be reconciled with the CUA (which is a legal issue).

Seemingly aware of the weakness of the foregoing arguments, the Attorney General advances a much more creative alternative theory, which is designed to immunize the probation condition from judicial review, thereby rendering its unlawfulness irrelevant. As the Attorney General sees it, the crucial waiver in this case is not appellant's "voluntary" acceptance of the condition at the sentencing hearing, as my colleagues believe, but the waiver he made at the time he entered his plea of guilty.

The written "Waiver of Constitutional Rights and Declaration" appellant filed in support of his motion to change his plea states: "Even though I will be convicted in this case as a result of my plea, I have the right to appeal the judgment and rulings of the court. [¶] **I give up my right of appeal.**" (Original boldface.) Appellant initialed the provision and signed the waiver form, acknowledging that his attorney had read and explained the document to him and that appellant entered the agreement freely, voluntarily, and knowingly. He also initialed the portions of the form stating that the maximum punishment was "3 years State prison," and that the prosecution would not file criminal charges against him for embezzling $2,000 from his former employer, Mervyn's, but if appellant received probation on the instant offense it would be conditioned on payment of restitution to Mervyn's for the uncharged embezzlement. According to the Attorney General, this was a "specific waiver" which operates to bar appellant from appealing any later sentencing error, presumably including the lawfulness of the challenged condition of probation.

The Attorney General's contention rests chiefly on *People v. Panizzon* (1996) 13 Cal.4th 68 [51 Cal.Rptr.2d 851, 913 P.2d 1061] (*Panizzon*), which actually undermines his argument. As part of a plea bargain, Panizzon specifically agreed to a sentence of life with the possibility of parole, plus 12 years, and acknowledged that a restitution fine would be imposed and that he waived the right to appeal the sentence. (*Id.* at pp. 73–74.) These were precisely the sentencing provisions actually imposed on him. He nevertheless argued on appeal that the error he claimed—which was "constitutional disproportionality in comparison with sentences imposed subsequently on his codefendants"—occurred after the entry of his plea and was therefore " 'future sentencing error' " outside his contemplation and knowledge at the time he made his waiver and beyond the scope of his waiver, citing *People v. Sherrick* (1993) 19 Cal.App.4th 657 [24 Cal.Rptr.2d 25] (*Sherrick*) and *People v. Vargas* (1993) 13 Cal.App.4th 1653 [17 Cal.Rptr.2d 445] (*Vargas*). (*Panizzon*, at p. 85.) The Supreme Court soundly rejected this claim.

After pointing out that the sentence imposed was exactly that specified in the plea agreement, the court stated that the defendant was really seeking "appellate review of an integral element of the negotiated plea agreement, *as*

*opposed to a matter left open or unaddressed by the deal.* Since both the length of the sentence and the right to appeal the sentence are issues that cannot fairly be characterized as falling outside of defendant's contemplation and knowledge when the waiver was made, the reasoning of [*Sherrick*] and [*Vargas*] is inapposite." (*Panizzon, supra,* 13 Cal.4th at p. 86, italics added.) The *Panizzon* court agreed that *Sherrick* and *Vargas* "support the proposition that a defendant's *general waiver* of the right to appeal, given as part of a negotiated plea agreement, will not be construed to bar the appeal of sentencing errors occurring subsequent to the plea." (*Panizzon,* at p. 85, italics added, fn. omitted.) The defendants in *Sherrick* and *Vargas,* however, "were attempting to appeal sentencing issues that were left *unresolved* by the particular plea agreements involved." (*Panizzon,* at p. 85.) "In each of those decisions, the appellate court viewed the sentencing issue as not being within the contemplation and knowledge of the defendant at the time the waiver was made and so refused to extend thereto a general waiver of the right to appeal." (*Ibid.*)

In *Panizzon,* by contrast, the "[d]efendant's characterization of the issue on appeal as an 'unforeseen or unknown error' is off the mark because the sentence imposed by the court was neither unforeseen nor unknown at the time defendant executed the Waiver and Plea agreement. Moreover, the essence of defendant's claim is that his sentence is disproportionate to his level of culpability [citation], a factor that also was known at the time of plea and waiver. Thus, the real thrust of defendant's claim concerns events predating entry of the plea and waiver." (*Panizzon, supra,* 13 Cal.4th at p. 86.) *Panizzon* rejected the defendant's contention "that a *specific waiver* of the right to appeal a negotiated sentence is unenforceable as to 'unforeseen or unknown errors' occurring subsequent to the waiver." (*Id.* at p. 85, italics added.) As stated in *In re Uriah R.* (1999) 70 Cal.App.4th 1152 [83 Cal.Rptr.2d 314], *Panizzon* stands for the proposition that where "the defendant agrees to a bargain which includes a specific or indicated sentence, and if that is the sentence actually imposed, the defendant's waiver will foreclose appellate review of the sentence; *any* challenge to the sentence will be deemed a challenge to an integral component of the bargain." (*In re Uriah R.,* at p. 1157, italics added.)

What was said of the defendant in *Panizzon*—that he sought to "challeng[e] the very sentence to which he agreed as part of the plea" (*Panizzon, supra,* 13 Cal.4th at p. 73)—certainly cannot be said of appellant here. The situation in this case is instead analogous to that in *Sherrick* and *Vargas,* because the sentence imposed on appellant was not specified in the plea or waiver, but left open to the court.

The waiver incorporated in appellant's motion to change his plea is accompanied by acknowledgments that "the sentence I receive is solely

within the discretion of the Court," except that the maximum punishment it may impose is three years in state prison, and that whether or not appellant will get probation is also "to be determined solely by the Court." In other words, appellant did not know at the time he made his waiver whether he would be sentenced to state prison or county jail or get probation; nor, in the event he was given probation instead of prison or jail, did he know what conditions of probation would be imposed, save the requirement of restitution to the victim of the uncharged embezzlement. Nothing at all was said about whether he would retain his right to use marijuana for medicinal purposes. Appellant's waiver was not a "specific waiver" like that in *Panizzon*, but a "general waiver" (see *Panizzon, supra*, 13 Cal.4th at p. 85, fn. 11) that does not give up the right to challenge unanticipated future error.

The Attorney General argues that appellant's reliance on *In re Uriah R., supra*, 70 Cal.App.4th 1152, *Sherrick, supra*, 19 Cal.App.4th 657, and *Vargas, supra*, 13 Cal.App.4th 1653, is unjustified because "[i]n all three cases, unlike this one, the challenge was not to the components of the judgment constituting the agreed or indicated sentence at the time the plea and waivers were made and, as a result, the appellate claims were not within a general waiver of the right to appeal." Herein lies the creative aspect of the Attorney General's waiver theory.

The Attorney General relies upon a line of cases (having nothing to do with any issue raised in this case) stating that though a notice of appeal states that it is from the "sentence," it must be considered as being from the judgment, "since the judgment and the sentence are in fact one in common parlance and contemplation." (*People v. Bauer* (1966) 241 Cal.App.2d 632, 635 [50 Cal.Rptr. 687], citing *People v. Sweeney* (1960) 55 Cal.2d 27, 33, fn. 1 [9 Cal.Rptr. 793, 357 P.2d 1049] ["The judgment is the sentence and appealing from both is tautological"]; see also *People v. Rodriguez* (1963) 222 Cal.App.2d 221, 226 [34 Cal.Rptr. 907]; *In re Anderson* (1939) 34 Cal.App.2d 48, 50 [92 P.2d 1020].) The Attorney General reasons that because the appellant waived the right to appeal the judgment, which is also the sentence, it is irrelevant whether he knew or should have known the specific conditions that would later be imposed on him.[9]

The Attorney General's argument conveniently eliminates the difference between specific and general waivers of the right to appeal, which is at the

---

[9] The Attorney General also contends that, "[i]n *the mind* of a counseled criminal defendant entering into his plea bargain and in law, the judgment is the probation order containing the terms and conditions set by the court." (Italics added.) Unlike the Attorney General, I cannot believe criminal defendants know or are told by counsel that any unspecified probation condition later imposed by the court would be unappealable because technically it is a component of the judgment.

heart of the relevant case law; by obscuring this difference, the Attorney General attempts to apply case law applicable to specific waivers to this case even though appellant's waiver was a general one. The effort is unavailing. None of the cases cited by the Attorney General (i.e., *People v. Rodriguez, supra*, 222 Cal.App.2d 221, *People v. Bauer, supra*, 241 Cal.App.2d 632, and *In re Anderson, supra*, 34 Cal.App.2d 48) relate to the scope of a waiver of the right to appeal or in any way support the theory that a probation condition cannot be appealed because it is an aspect of the judgment the defendant specifically waived the right to challenge. The Attorney General provides no case dealing with the scope of a waiver of the right to appeal that even adverts to the legal principle he relies upon.

Nor is appellant's appeal barred by the lack of a certificate of probable cause, as the Attorney General also maintains. The certificate of probable cause requirement (Pen. Code, § 1237.5) generally does not apply to matters occurring after entry of the plea such as the penalty to be imposed. In particular, the certificate requirement does not apply to "attacks on the trial court's *discretionary* sentencing choices left open by the plea agreement" (*People v. Williams* (2007) 156 Cal.App.4th 898, 910 [67 Cal.Rptr.3d 516]) of the sort with which we are here concerned (*Panizzon, supra*, 13 Cal.4th at p. 78; *People v. Sumstine* (1984) 36 Cal.3d 909, 915, fn. 3 [206 Cal.Rptr. 707, 687 P.2d 904]; *People v. Narron* (1987) 192 Cal.App.3d 724, 730 [237 Cal.Rptr. 693]).

## V.

### Justice Haerle's Interpretation of Section 11362.795 Distorts the Text and Purpose of the Statute, Which in Any Case Never Came into Play in This Case

Speaking only for himself, Justice Haerle maintains that the enactment of section 11362.795 in 2004, eight years after enactment of the CUA, vested the trial court with discretion to impose the challenged condition even if appellant's right to use marijuana is protected by the CUA.[10] This interpretation of section 11362.795 is baseless and unreasonable; and if it were correct, the statute would represent an unconstitutional amendment of the CUA.

---

[10] Because Justice Haerle speaks only for himself on this issue and his interpretation of section 11362.795 is therefore not authoritative, it is appropriate to explain why the portions of his opinion and mine addressing this statute were not excluded from the opinions certified for publication. First, though section 11362.795 was enacted seven years ago, it has never previously been interpreted in a published opinion. The statute has, however, been interpreted and applied in a significant number of unpublished and therefore noncitable opinions. (Cal. Rules of Court, rule 8.1115.) Because published opinions construing the statute do not exist, and the unpublished opinions that do are easily obtained by interested lawyers and judges, the

Section 11362.795, which was never mentioned below by the court or counsel, and only in passing by the Attorney General, declares: "(a)(1) Any criminal defendant who is eligible to use marijuana pursuant to [the CUA] may request that the court *confirm* that he or she is allowed to use medical marijuana while he or she is on probation or released on bail. [¶] (2) The court's decision and the reasons for the decision shall be stated on the record and an entry stating those reasons shall be made in the minutes of the court. [¶] (3) During the period of probation or release on bail, if a physician recommends that the probationer or defendant use medical marijuana, the probationer or defendant may request a modification of the conditions of probation or bail to authorize the use of medical marijuana." (Italics added.)

The reasoning that leads Justice Haerle to conclude that section 11362.795 grants a sentencing court "discretion to impose a no-marijuana-use probation condition on the holder of a [facially valid] medical marijuana card" (maj. opn., *ante*, at p. 853), focuses on the Legislature's use of the word "confirm." Since a trial court may "confirm" that a probationer is allowed to use marijuana while on probation, Justice Haerle points out, "it would seem obvious that it may also not so 'confirm.' " (*Ibid.*) Pointing out that the statute requires the court to place its "decision" (to confirm or not confirm) on the record and in the minutes of the court (which was not done here), Justice Haerle attributes to the verb "confirm" the meaning of the verb "decide" *and untethers the judicial decision from the directives of the CUA.* The protections of the CUA are unavailable, Justice Haerle says, because although the CUA bars the imposition of a criminal sanction for the use of medical marijuana, it does not specifically preclude a trial court "from imposing a 'no-marijuana' probation condition." (See maj. opn., *ante*, at pp. 853–854, fn. 13.) This theory falls of its own weight.

First of all, the CUA does not specifically preclude a court from imposing any particular criminal sanction for the use of medical marijuana because it prohibits all such sanctions. The blanket prohibition on the imposition of criminal sanctions for the use of medical marijuana set forth in the CUA would be rendered nugatory if Proposition 215 had to specifically enumerate every

unpublished opinions may influence the strategy of counsel and the decisions of trial and perhaps even appellate courts. The existence for a long period of time of an underground body of law on the meaning of section 11362.795 (to which some members of this panel have admittedly contributed) is injudicious. Second, the California Rules of Court justify publication of an opinion where it "[i]s accompanied by a separate opinion concurring or dissenting on a legal issue, and publication of the majority and separate opinions would make a significant contribution to the development of the law" (Cal. Rules of Court, rule 8.1105(c)(9)), and this is particularly the case where, as here, the opinion invokes a rule of law previously overlooked in published opinions (see *id.*, rule 8.1105(c)(8)). Though Justice Haerle's interpretation of section 11362.795 and mine have no precedential value, we publicize the exegetical problem, identify and advance conflicting views, and thereby underscore the need for and hopefully facilitate an authoritative judicial resolution.

particular sanction that it proposed to prohibit. Justice Haerle's view that the CUA does not bar imposition of a "no-marijuana" condition of probation ignores the plain meaning of section 11362.5, subdivision (b)(1)(B), and annuls the obvious purpose of the voters who enacted the CUA.

Furthermore, as used in section 11362.795, the word "confirm" does not have the meaning Justice Haerle attributes to it. According to the Oxford English Dictionary, the word "confirm" has two principal meanings: "To make firm or more firm, to add strength to, to settle, establish firmly" and, more pertinent here, "To make valid by formal authoritative assent (a thing already instituted or ordained); to ratify, sanction." (Oxford English Dict. (2d ed. 1989) p. 709; see also Roget's II, The New Thesaurus (1980) p. 187 [stating that to "confirm" is "[t]o assure the certainty or validity of: *a suspicion confirmed by evidence*"].) The Legislature's use of the word "confirm" in section 11362.795, obviously contemplates a judicial inquiry into the largely factual question whether the defendant's asserted right to use marijuana for medical purposes satisfies the conditions of the CUA. If, as Justice Haerle says, the statute can be construed to permit a judge to decide (i.e., "not confirm") that a defendant may not use marijuana while on probation even if he or she is authorized by the CUA to use medical marijuana, then a judge could also decide (i.e., "confirm") that a defendant is allowed to use marijuana while on probation even if he or she is *not* authorized to do so by the CUA, which is, of course, absurd. Justice Haerle's analysis simply cannot be reconciled with *Mower* and *Tilehkooh*, which he ignores.

The absence of legislative intent to grant judges the right to restrict the use of medical marijuana by a person eligible to do so under the CUA is shown not just by the text of section 11362.795, but also by its legislative history. Section 11362.795 was part of Senate Bill No. 420 (2003–2004 Reg. Sess.) introduced by Senator John Vasconcellos in the 2003 legislative session and commonly known as the Medical Marijuana Program. "In uncodified portions of the bill the Legislature declared that, among its purposes in enacting the statute, was to '[c]larify the scope of the application of the [CUA] and facilitate the prompt identification of qualified patients and their designated primary caregivers in order to avoid unnecessary arrest and prosecution of these individuals and provided needed guidance to law enforcement officers.' (Stats. 2003, ch. 875, § 1.) Additionally, the Legislature declared that a further purpose of the legislation was to 'address additional issues that were not included within the act, and that must be resolved in order to promote the fair and orderly implementation of the act.' (*Id.*, § 1.) [¶] To achieve the goal of 'facilitat[ing] the prompt identification of qualified patients and their designated primary caregivers,' the Legislature established a voluntary program for the issuance of identification cards to such qualified patients. (§ 11362.71 et seq.) The Legislature extended certain protections to individuals who elected to participate in the identification card program. Those

protections included immunity from prosecution for a number of marijuana-related offenses that had not been specified in the CUA, among them transporting marijuana. 'Subject to the requirements of this article, the individuals specified in subdivision (b) shall not be subject, on that sole basis, to criminal liability under Section 11357 [possession of marijuana], 11358 [cultivation of marijuana], 11359 [possession for sale], 11360 [transportation], 11366 [maintaining a place for the sale, giving away or use of marijuana], 11366.5 [making available premises for the manufacture, storage or distribution of controlled substances], or 11570 [abatement of nuisance created by premises used for manufacture, storage or distribution of controlled substance].' (§ 11362.765, subd. (a).) By authorizing a CUA defense to these other marijuana-related offenses, the Legislature furthered its goal of 'address-[ing] additional issues that were not included within the act, and that must be resolved in order to promote the fair and orderly implementation of the act.' (Stats. 2003, ch. 875, § 1.)" (*People v. Wright, supra*, 40 Cal.4th at p. 93.)

Considering that the overall purpose of the MMP is to *"broaden the scope of the CUA in order to facilitate greater access to [medical] marijuana"* (*City of Garden Grove v. Superior Court* (2007) 157 Cal.App.4th 355, 373 [68 Cal.Rptr.3d 656], italics added), it is impossible to believe section 11362.795 was designed to authorize a sentencing court to impose conditions of probation that divest probationers of rights protected by the CUA. But that is exactly what Justice Haerle's analysis posits; as he states: "after the adoption of section 11362.795(a) in 2004, the suggestion that the 1996 CUA precludes a trial court from imposing a 'no-marijuana' probation condition is simply untenable." (Maj. opn., *ante*, at p. 854, fn. 13.) If the purpose and effect of section 11362.795 is that which Justice Haerle attributes to it, the statute adds a provision restricting the right to use medical marijuana not found in the CUA, which would constitute an amendment to that act. (*Knight v. Superior Court* (2005) 128 Cal.App.4th 14, 22 [26 Cal.Rptr.3d 687].) As such, section 11362.795 would be unconstitutional, because the Legislature cannot amend a measure enacted by means of a voter initiative, such as Proposition 215, unless the initiative grants the Legislature authority to do so (Cal. Const., art. II, § 10, subd. (c); *People v. Cooper* (2002) 27 Cal.4th 38, 44 [115 Cal.Rptr.2d 219, 37 P.3d 403]), and Proposition 215 contained no such exemption from voter approval.

Justice Haerle's belief that *City of Claremont, supra*, 177 Cal.App.4th 1153 demonstrates the constitutionality of his interpretation of section 11362.795 (maj. opn., *ante*, at p. 855 & fn. 15) is totally unsupported by the opinion. *City of Claremont* was an action to prevent the defendant from operating a medical marijuana dispensary anywhere within the city. The trial court concluded, and the Court of Appeal agreed, that the operation of such a dispensary without the city's approval constituted a nuisance per se under the city's municipal code and could properly be enjoined. For a variety of

reasons, all absent in the present case, the Court of Appeal rejected the defendant's argument that the city's action conflicted with the stated purpose of the CUA "[t]o ensure that seriously ill Californians have the right to obtain and use medical marijuana for medical purposes." (§ 11362.5, subd. (b)(1)(A)). As the court pointed out, the CUA "do[es] not address zoning or business licensing decisions" (*City of Claremont*, at pp. 1172–1173) and "does not authorize the operation of a medical marijuana dispensary [citations], nor does it prohibit local governments from regulating such dispensaries" (*id.* at p. 1173).

Furthermore, because "the CUA expressly states that it does not supersede laws that protect individual and public safety . . ." (*City of Claremont, supra,* 177 Cal.App.4th at p. 1173; see § 11362.5, subd. (b)(2)), such as laws relating to public and private nuisances, the act "did not supersede the City's moratorium on medical marijuana dispensaries, [which was] enacted as an urgency measure 'for the immediate preservation of the public health, safety, and welfare.' [Citation.]" (*City of Claremont*, at p. 1173.)

*City of Claremont* is predicated on the principle that "legislative enactments related to the subject of an initiative statute may be allowed" when they involve a "related but distinct area" (*Mobilepark West Homeowners Assn. v. Escondido Mobilepark West* (1995) 35 Cal.App.4th 32, 43 [41 Cal.Rptr.2d 393]) or relate to a subject of the initiative that the initiative "does not specifically authorize *or* prohibit." (*People v. Cooper, supra,* 27 Cal.4th at p. 47; accord, *County of San Diego v. San Diego NORML, supra,* 165 Cal.App.4th at p. 830.) While the CUA does not conflict with or supersede the municipal actions challenged in *City of Claremont*, it could not more clearly conflict with the imposition of a criminal sanction on the use of medical marijuana. Justice Haerle's suggestion that *County of San Diego v. San Diego NORML* supports his interpretation of section 11362.795 (maj. opn., *ante*, at p. 855, fn. 15) is mystifying. The provisions of the MMP upheld in that case, which established a medical marijuana identification card program, "amended provisions of the Health and Safety Code regarding regulation of drugs adopted by the Legislature, *not provisions of the CUA.*" (*County of San Diego v. San Diego NORML*, at p. 831, italics added.) It seems to me impossible to say that the CUA does not prohibit the imposition of any criminal sanction on the lawful use of medical marijuana, which is what Justice Haerle says section 11362.795 permits.

Finally, Justice Haerle's reconstruction of section 11362.795 is really beside the point, because the procedure prescribed by that statute was never undertaken in this case. The court did not treat appellant's request to be allowed to use medical marijuana while on probation as a request for confirmation that his use of marijuana satisfied the conditions of the CUA,

nor impose the challenged condition on that basis; and it therefore did not place any decision regarding that issue on the record and in the minutes of the court, as specifically required by section 11362.795. The court chose instead to avoid the question whether appellant's use of medical marijuana was recommended or approved by a physician, as indicated by his medical marijuana identification card, and to rely entirely on his "voluntary" acceptance of the restriction, which the court made clear was the only way appellant could avoid a jail or prison sentence.

## VI.

Because the trial court made no finding and there is no evidence that appellant's right to use medical marijuana is not protected by the CUA, and restriction of that right has not been shown to serve any reformative or rehabilitative purpose, I would strike the challenged condition.

A petition for a rehearing was denied January 22, 2010, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 10, 2010, S179955. Kennard, J., Werdegar, J., and Moreno, J., were of the opinion that the petition should be granted.