Filed 1/13/15  P. v. Maldonato CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>PAUL EUGENE MALDONATO,<br><br>     Defendant and Appellant. | A139855<br><br>(Marin County<br>Super. Ct. No. SC179310A) |

## I.

## INTRODUCTION

Appellant has a drug problem.  He started consuming alcohol at age 13, and taking drugs at age 15.  By age 17, he had tried cocaine, Ecstasy, heroin, marijuana, methadone, methamphetamine and other psychedelic drugs.

Appellant's drug-related convictions include one in 1993 for being intoxicated in a public place, a 2002 Florida conviction for possession of drug paraphernalia, a 2003 Colorado conviction for "possession of cannabis," a 2005 Colorado conviction for felony possession of a controlled substance, and his current convictions to which he pled guilty, to wit: possession of a controlled substance, possession of LSD for sale, and possession of marijuana for sale.

In this case appellant was granted probation.  Among the conditions he agreed to was that he not use drugs, including marijuana.  He subsequently violated his probation by testing positive for several addictive drugs.

1

In June 2013, appellant sought treatment at the Bayside Marin Intensive Outpatient Program and stated to personnel there that "my drug use is killing me and it's [*sic*] time to stop." He admitted that he needed residential treatment.

Despite this, one month later, appellant filed a motion to modify the terms of his probation to allow him to use marijuana for medicinal purposes. The trial court denied his request.

On appeal, appellant contends the trial court abused its discretion by refusing to allow him to use medicinal marijuana. We conclude that there was no such abuse of discretion or error by the trial court in denying his motion.

## II.

## PROCEDURAL AND FACTUAL BACKGROUNDS

On February 14, 2012, a criminal complaint was filed by the Marin County District Attorney's Office charging appellant with three counts of transportation of a controlled substance (cocaine, hydrocodone, oxycodone) (Health & Saf. Code, § 11352, subd. (a))[1] (Counts 1, 3, 5), three counts of possession for sale of a controlled substance (cocaine, hydrocodone, oxycodone) (§ 11351) (Counts 2, 4, 6), one count each of importation, sale, distribution, and transportation of LSD (§ 11379, subd. (a)) (Count 7), possession for sale of LSD (§ 11378) (Count 8), sale or transportation of marijuana (§ 11360, subd. (a)) (Count 9), and possession of marijuana for sale (§ 11359) (Count 10).

Referencing the presentence report prepared by the probation department, respondent's brief contains the following recitation of facts concerning the circumstances of appellant's arrest and subsequent charges, which are not in dispute:

"During a traffic stop, [appellant], who had a full extradition warrant out of Colorado for dangerous drugs, was found in possession of narcotics on his person. Inside a small blue container in his left pant pocket, suspected cocaine was found. Appellant admitted it was crack cocaine. A search of the vehicle revealed more suspected narcotics

---

[1] All further undesignated statutory references are to the Health and Safety Code.

and contraband: 600 to 800 narcotic pain pills (283 pills of [o]xycodone, 744 pills of [h]ydrocodone), several sheets of suspected LSD (650) tabs, eye dropper containing suspected liquid LSD, less than two ounces (56.2 grams) of suspected cocaine, glass pipes used for smoking narcotics, suspected concentrated hashish (15.3 grams), over one ounce of marijuana (36 grams), 15.3 grams of concentrated marijuana, scales, plastic baggies, hypodermic needles, bags which had contained marijuana and cocaine, and a large amount of cash, $16,421.00[.]  A tourniquet and cotton swabs, commonly used by drug dealers who inject narcotics, and a California driver's license and a Green Dot card in the name of Dave Edgar Allen with [appellant's] photo was found.  The driver's license number returned to an Ann Nguyen, [appellant's] driver's license was expired."

After appellant's arrest, a search warrant was obtained and executed at appellant's home.  The return on the warrant confirmed that additional drug and drug dealing accoutrements were found at the residence, including 674.6 grams of marijuana.

On April 2, 2012, pursuant to a negotiated settlement, appellant pleaded guilty to one count each of possession for sale of a controlled substance (Count 2), possession for sale of LSD (Count 8), and possession for sale of marijuana (Count 10). The remaining counts were dismissed with *Harvey*[2] waivers.  Sentencing was set for April 26, 2012.

At the sentencing hearing, the court suspended imposition of sentence and placed appellant on three years supervised probation, subject to conditions to which appellant agreed.  The terms of the grant of probation included that appellant would "not use, consume, or possess any non-prescribed or illegal substances, *including prescribed medical marijuana,* unless specifically authorized by the court."  (Italics added.)

On May 29, 2013, a petition to revoke appellant's probation was filed alleging that on March 29 and April 12, 2013, appellant tested positive for cocaine, on April 15, 2013, he tested positive for benzodiazepines, and on May 9, 2013, he tested positive for opiates and morphine.  The petition noted that appellant had registered as a narcotics offender the previous September, and explained that he had been given several opportunities to

---

[2]  *People v. Harvey* (1979) 25 Cal.3d 754.

3

comply with the above-quoted term of his probation due to significant health issues, but he was continuing to engage "in criminal behavior." The petition recommended that appellant receive a 90-day jail sentence for the violation of "a major term of his probation," but that it be stayed "pending the successful completion of an intense outpatient treatment program."

Apparently, between the time the petition to revoke appellant's probation was filed in late May and the hearing on the motion in July, appellant enrolled in an outpatient treatment program at Bayside Marin on June 6, 2013. The Bayside Marin treatment plan, later submitted by appellant in support of his motion to modify the terms of his probation, noted that appellant's long term goal was to remain abstinent from addictive substances because "my drug use is killing me and its [*sic*] time to stop."

On July 9, 2013, the court revoked appellant's probation on the ground that he consumed restricted drugs, allegations appellant admitted at the hearing and after appropriate advisements. Appellant's probation was revoked, but reinstated. One condition for the reinstatement of his probation status was appellant's successful completion of "an intense outpatient treatment program."

At the conclusion of the hearing, appellant's counsel asked the court to modify the terms of his probation to allow appellant to consume marijuana for medicinal reasons. Specifically, counsel advised the court that appellant was suffering from chronic ulcerative colitis and submitted one-page abstracts from four research reports purporting to show that marijuana can be helpful in treating this condition. The abstracts appear to be from research conducted in Canada, Italy (2), and Israel.[3] Counsel also submitted a statement from a Dr. Lovejoy, a doctor of osteopathic medicine, recommending the use of marijuana. The court refused to grant the modification that day, but set a hearing on

---

[3] The prosecutor objected to consideration of these abstracts on the grounds of hearsay. The court agreed that they were "objectionable," but considered them only as part of an ex parte application by appellant for the modification. The abstracts were not submitted as exhibits in connection with appellant's written motion, and were not referenced by anyone at the hearing.

4

the issue to enable appellant to file a formal motion, and to enable the prosecutor and probation department to respond.

On July 17, 2013, appellant filed a written motion for a modification of his probation to allow the use of medical marijuana.  The motion was supported by records from Bayside Marin, which was providing therapy to appellant to overcome his drug issues, medical records from the Veteran's Administration confirming that appellant was suffering from various maladies, including colitis, and an email exchange with the probation department which confirmed that the department was not taking a position on the motion.  In addition, the motion was supported by a preprinted form signed by John Lovejoy, D.O., whose services were billed to appellant by Priceless Evaluations, and which included the following:  "The purpose of this medical marijuana recommendations is to clearly represent that the individual (i.e., patient) whose information is indicated on this recommendation is a patient who was evaluated by the Licensed Physician whose name and license is indicated below who concluded that based on the patient's medical problems (i.e., medical conditions), he or she is permitted to possess and or cultivate medical marijuana in accordance with California Health and Safety Code Section 11362.5, Compassionate Use Act of 1996 (i.e., Proposition 215)."

The motion was opposed by the prosecutor who filed written opposition.

A hearing on the motion was held on August 15, 2013.  After hearing the arguments of counsel, the court took the matter under submission.  The next day, a minute order was entered denying the motion.  The court noted that denial was based "on the defendant's illness, his primary physician's failure to specify marijuana as an appropriate drug to treat his condition; and failure of the moving party to fullfil [*sic*] the requirement of 'Leal' before the probation condition may be found invalid."

Appellant filed a notice of appeal on September 13, 2013.

## III.

## DISCUSSION

The court's reference to "Leal" in its minute order is to *People v. Leal* (2012) 210 Cal.App.4th 829 (*Leal*), a case discussed and relied on by both parties here and below.

5

We begin our consideration of *Leal* by confirming its preliminary holding that the standard of review applicable to the trial court's denial of appellant's motion to modify his probation is abuse of discretion. That standard of review is highly deferential and the sentencing court abuses its discretion only when its determination is arbitrary or capricious or exceeds the bounds of reason under a totality of the circumstances. (*Id.* at p. 843.)

*Leal*, decided by Division Two of this court, involved a defendant who agreed to a grant of probation which included a term forbidding him to use marijuana, even for medicinal reasons. The underlying crimes for which Leal was found guilty by a jury were possession of marijuana for sale while armed, three firearm offenses, and resisting a peace officer. (*Leal*, *supra*, 210 Cal.App.4th at p. 833.) Sentencing for those convictions also disposed of another pending case which included another offense for possession of marijuana for sale offense. (*Ibid*). The court affirmed the trial court's imposition of the challenged probation condition finding no abuse of discretion. (*Ibid*.)

The court analyzed the defendant's challenge by incorporating the three-part test applied generally to help assess the appropriateness of challenged probation conditions set forth in *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*), known colloquially as the *Lent* test. (*Leal*, *supra*, 210 Cal.App.4th at p. 840.) That examination has been explained by our high court much more recently than its original articulation in 1975 in *Lent*: " 'We review conditions of probation for abuse of discretion. [Citations.] Generally, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. . . .' [Citation.]" [Citation.] This test is conjunctive—*all three prongs must be satisfied before a reviewing court will invalidate a probation term*. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality.

6

[Citation.]' [Citations.]" (*Leal*, *supra*, 210 Cal.App.4th at p. 840, italics added; *People v. Olguin* (2008) 45 Cal.4th 375, 379–380.)

As part of this analytical process the *Leal* court opined that the court first was required to determine if the defendant had a valid authorization to use medicinal marijuana under the Compassionate Use Act (CUA). The *Leal* court explained that at this stage a trial court's role is simply to decide if the medicinal marijuana use authorization was validly issued, which includes whether the defendant has made a facial showing through a qualified physician that the defendant's health would benefit from the use of marijuana. (*Leal*, *supra*, 210 Cal.App.4th at pp. 839-840.)

Unlike *Leal*, where the prosecution did not dispute the validity of the defendant's CUA authorization, here the prosecution has hotly contested the validity of appellant's authorization both below and on appeal.

The Attorney General in this case makes three related points in this regard: (1) appellant's treating doctors, while prescribing numerous (16) medications to control his colitis, did not recommend marijuana as one of them, (2) instead appellant simply went to a marijuana clinic and followed the perfunctory process of getting an authorization from a clinic staff physician, and (3) there is no showing that medicinal marijuana was needed or would be beneficial in controlling his condition. Indeed, the trial court's minute order denying the modification rests, in part, on the fact that appellant's regular attending doctors did not recommend marijuana for his colitis, or for any other medical condition.

Appellant's response is that the approval of the use of medicinal marijuana by Dr. Lovejoy created a presumption that marijuana is appropriate for the treatment of his colitis. In support of this assertion, appellant cites again to *Leal*. (*Leal*, *supra*, 210 Cal.App.4th at p. 838.) But, *Leal* did not proffer such a rule of presumption relying on the fact that the prosecution simply "made no discernible effort to challenge the validity of the card Leal produced. [Citation.]" (*Id.* at p. 839.)

Turning to the record in this case, the evidence reputed to support appellant's claim that he would achieve a legitimate medical benefit from the use of marijuana was

virtually nonexistent. First, appellant had been diagnosed with ulcerative colitis in 2003, according to the VA medical records he submitted, and that condition continued unabated until at least 2012. As already noted, appellant was a chronic drug user, which included marijuana. If appellant was going to obtain any therapeutic benefit from the use of marijuana to control either his illness or his symptoms, there likely would be some reflection of that indicated in the records.

More importantly, although prescribing 16 different drugs for appellant's illnesses, his primary caregivers did not recommend that he seek authorization for medicinal marijuana.[4] Given the fact that there was no admissible evidence produced showing that marijuana is a recognized form of treatment for colitis, it was reasonable to infer that appellant's primary care doctors did not think it useful.

Last, the form authorization signed by Dr. Lovejoy does not speak to the need for appellant to use marijuana for control of his colitis or its symptoms. Instead the form generically recites that he "concluded that based on the patient's medical problems (i.e., medical conditions), he or she is permitted to possess or cultivate medical marijuana in accordance with California Health and Safety Code Section 11362.5, Compassionate Use Act of 1996 (i.e., Proposition 215)."

In the first instance, it is appellant's burden to show that he had a legitimate, medical need for marijuana sufficient to justify a modification of a probation term to which he did not object, and which was lawfully imposed at the time of sentencing. (See *People v. Moret* (2009) 180 Cal.App.4th 839.) The record supports the trial court's conclusion that there was no indication that he had a medical need for marijuana, and on that basis alone, the trial court did not abuse its discretion in denying the motion to strike the condition.

---

[4] Appellant points out that federal law forbid his VA physicians from prescribing marijuana use for medicinal purposes. However, that does not rule out their ability to recommend that appellant seek such remedial relief from non-federal physicians who are free to prescribe marijuana if medically indicated.

But, indulging appellant's claim further, even if that showing had been made, application of the three-part *Lent* test warranted the trial court's denial as well.

There is no question in our minds that the condition of probation restricting appellant from using *all* mind-altering substances, including marijuana, is both a condition that is related to the convictions for possession for sale of a controlled substance (Count 2), possession for sale of LSD (Count 8), and possession for sale of marijuana (Count 10) to which appellant pleaded guilty, and is related to reducing future criminality. As to this last point, appellant has been involved in the criminal justice system for drug-related offenses virtually his entire adult life. Prohibiting him from the continued use of such substances is clearly related to reducing similar violations in the future. Even if marijuana use authorized for medicinal purposes is not itself criminal, if it is reasonably related to future criminality, its use can be banned as a condition of probation. (*People v. Hughes* (2012) 202 Cal.App.4th 1473, 1481; *People v. Brooks* (2010) 182 Cal.App.4th 1348, 1352.)

But the *Leal* opinion seems to go further and requires a balancing of the need for the modification against the public policy imperatives of rehabilitating appellant and protecting the public. This balancing clearly weighs in favor of denying the motion to modify. The record here supports an urgent need to retain the probationary term which is vital to appellant's rehabilitation from a life-long embrace of drugs, addictions that he readily admitted to his Bayside Marin clinicians were "killing him." Indeed as discussed above, elimination of that prohibition would have been wholly inconsistent with the rehabilitation plan developed by Bayside Marin for appellant, the success of which was a sine qua non of the court's willingness to reinstate probation.

Appellant's drug-related criminality was not only self-destructive, but also constituted a significant harm to the public as he was a vendor of all forms of mind-altering poisons over a period of many years. Keeping him away from such substances, including marijuana, one and one-half pounds of which were found in his home after his arrest, is critical to minimizing the harm he had been causing society by his unrelenting drug peddling.

On the other hand, the record of medical need here is no better than that in *Leal*: "[O]n the medical need side, nothing beyond mere possession of a medical use identification card. That card meant only that Leal met a minimal threshold, in a recommending physician's view, of getting some unquantified 'benefit from the use of marijuana' (§ 11362.5, subd. (b)(1)(A)) to help alleviate conditions within the broad sweep of the CUA and MMP [Medical Marijuana Program] (§§ 11362.5, subd. (b)(1)(A), 11362.7, subds. (g)–(h)), which did not require Leal to suffer a serious illness ([*People v.*] *Spark* [(2004)] 121 Cal.App.4th [259,] 268.). Leal was apparently the only party able to produce evidence of the medical benefits marijuana provided him and any alternative remedies he may have tried, yet he offered no such evidence. He therefore cannot show that the court's implicit step-three finding that the balancing of needs favored prohibiting CUA use constituted an abuse of discretion." (*Leal*, *supra*, 210 Cal.App.4th at p. 845, fn. omitted.)

Appellant has made no better showing. The sole, admissible evidence of medical need is the broad, nonspecific "benefit" recited in the generic form signed by Dr. Lovejoy which is analogous to the showing of medical need rejected as insufficient in *Leal*. To the contrary, a reasonable inference can be drawn from appellant's medical records, and from his chronic nontherapeutic use of marijuana over many years, that medicinal marijuana would be of little or no value in controlling his colitis.

For all of these reasons, we conclude that the trial court did not abuse its discretion in denying appellant's motion to modify the terms of his probation to allow him to use marijuana for medicinal reasons. Indeed, not only is there no showing of an abuse of discretion, but the record supports the conclusion that it was critical for appellant's own well-being, and that of the public, that he not use *any* mind-altering drugs.

## IV.

## DISPOSITION

The judgment is affirmed.

_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
RIVERA, J.


11